## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ERIC ESQUIRE DETERS<br>5247 MADISON PIKE<br>INDEPENDENCE, KY 41051 | : <br> : <br> : <br> : | Case No.  1:25CV640 |
| **Plaintiff** | : <br> : <br> : | Judge  **J.** HOPKINS |
| v. | : <br> : <br> : | COMPLAINT UNDER TITLE 18 U.S.C.<br>SECTION 241 CONSPIRACY AGAINST |
| JUDGE MICHAEL BARRETT<br>100 E 5TH ST #103,<br>CINCINNATI, OH 45202 | : <br> : <br> : <br> : | RIGHTS VIOLATION OF<br>CONSTITUTIONAL RIGHTS AND<br>JUDICIAL AND LEGISLATIVE<br>CORRUPTION |
| AND | : <br> : | |
| JUSTICE JOSEPH DETERS<br>65 SOUTH FRONT STREET,<br>COLUMBUS, OHIO 43215-3431 | : <br> : <br> : <br> : | |
| AND | : <br> : | |
| CHIEF JUSTICE SHARON KENNEDY<br>65 SOUTH FRONT STREET<br>COLUMBUS, OHIO 43215-3431 | : <br> : <br> : <br> : | |
| AND | : <br> : | |
| FORMER CHIEF JUSTICE<br>MAUREEN O'CONNOR<br>65 S. FRONT STREET<br>COLUMBUS, OH 43215-3431 | : <br> : <br> : <br> : <br> : | |
| AND | : <br> : | |
| WILLIAM SEITZ<br>255 E. 5TH ST. #1900<br>CINCINNATI, OH 45202 | : <br> : <br> : | |
| AND | : | |
| JOHN AND JANE DOES 1-10 | | |
| **Defendants** | | |

1

## JURISDICTION

1. Jurisdiction over Plaintiff's civil rights claims is conferred on this Court by §§ 42 U.S.C. 42 U.S.C. §§ 1983, 1985, 1986, 28 U.S.C. §§ 1331 (a), 1343 (a) and 1344.

2. Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367 (a).

3. The actions described within this Complaint occurred within Hamilton County and Franklin County, Ohio. Therefore, venue with this Court is proper pursuant to S.D. Ohio Local Rule 82.1.

## PARTIES

4. Plaintiff, Eric Esquire Deters, is a retired lawyer and legal consultant with a contract with Drake Law to assist on cases including what is referred to as the Durrani litigation.

5. Plaintiff also finances the Durrani litigation for Drake Law.

6. Judge Michael Barrett is a federal judge in the Southern District of Ohio, Western Division who presides over every Durrani related case in his District.

7. Justice Joseph Deters is an Associate Justice of the Ohio Supreme Court.

8. Judge Barrett and Justice Joseph Deters are the closest personal friends. This is not only personally known by me, it is common knowledge to their circle of friends.

9. Chief Justice Sharon Kennedy is the Chief Justice of the Ohio Supreme Court. She serves on the Court with Justice Joseph Deters.

10. Former Chief Justice Maureen O'Connor was the former Chief Justice of the Ohio Supreme Court. Chief Justice Sharon Kennedy succeeded her.

11. William Seitz is an attorney, Ohio state representative and attorney at Dinsmore Law.

12. John and Jane Does 1-10 are unknown conspirators which discovery will yield.

## INTRODUCTION

13. I will describe in this complaint all the trials and tribulations of the Durrani victims and myself relative to the Dr. Durrani litigation. From all my efforts in the cause, I have reached the unalterable conclusion I am one of the few in this world who is willing to endure all which befalls someone fighting against power in a righteous cause. I am willing to sacrifice all on behalf of the Durrani victims. To the end...wherever that end may be. This Complaint is brought in good faith.

14. No attorney would file this lawsuit, so I will on my own behalf. I did not bother to ask an attorney because I know what the answer will be. This fact is further proof of the false allegations against me that there are lawyers who will file any action I suggest and recommend.

15. I file this pro se because I can. Unfortunately, I cannot file it on behalf of all the Duranni victims since I am a retired attorney, but the results of the action will benefit all the Duranni victims and that is why I am filing it.

16. There is not one single unbiased American who if knew all which is contained in this Complaint would not agree the conduct of the Defendants relative to do Duranni victims and myself is reprehensible, repugnant, corrupt, evil and every related synonym to these words in the thesaurus.

17. There is no longer time for irrational patience. The Durrani litigation should have never been this difficult.

18. To not act based upon deference to pompous legal ceremony would be a betrayal to the Durrani victims who in the words of Patrick Henry have indulged in the illusions of hope far too long.  The Defendants and their co-conspirators have proven they have no guilt.

19. The anguish endured by the Durrani victims and myself on their behalf would vanquish lesser souls.

20. Rather than receiving justice, Lady Justice represented by the Defendants, has torn off her blindfold and snickered and sneered at the Durrani victims and myself.

21. The Defendants' treatment of the Durrani victims and myself is the evil and insidious performance of scoundrels.

22. The Durrani victims and I have not been betrayed by a kiss, but malevolent delay.

23. I for a decade now no longer deceive myself with misguided faith in the so-called legal system and the Defendants.

24. When someone in position and power to act for justice and good, as the Defendants, does not, those persons deserve public acrimonious rebuke, so they pay a price for their accommodation to evil. They also deserve to be sued.

25. Defendants deserve arrest and prosecution for their crimes.

26. Defendants' conduct is born from arrogance, greed, and the breach of public trust. Defendants believe they are untouchable and have acted accordingly.  They are not omnipotent.

27. Defendants have attempted to cause Duranni victims and myself to remonstrate, supplicate and prostrate before them and cower to their power. I spit at their feet.

28. Defendants have spurned, mocked, and rejected all the Durrani victims justified and proper legal procedural requests for over a decade.

4

29. The Durrani victims deserve a just end to their noble struggle and I am committed to that endeavor.

30. Based upon the Defendants' conduct, no more repugnant human beings have ever served on the judiciary and in William Seitz's case, the legislature.

31. The Defendants have subterfuged the justice system with excruciating depravity.

32. The Defendants attempted to cause weakness and trepidation, but they never counted on the Durrani victims and myself possessing collective resilience to hold them and the swag belly horned beasts they protect accountable.

33. The Defendants, like the Devil, rationalize all their sins.

34. The Defendants have unquenchable thirst to fulfill their scheme with their very souls for sale.

35. I am sending a preservation of evidence letter simultaneously with this Complaint and believe discovery will yield evidence of the Defendants' collective illegal, unlawful and criminal activities.

36. I wrote and published a book. "*The Butcher of Pakistan*" detailing the saga of the Durrani victims and myself up to 2020. I attach the entire book as **Exhibit 1** and incorporate it by reference in support of all the claims here. The sequel, a documentary and a movie, is on the way.

37. How is it that I, as the man who finances the Duranni victims' battle for over thirteen years, speaks out publicly about their plight, has risked everything I have for the Durrani victims' cause twice and who is appreciated by the 580 Duranni victims, is the person the court system and the legal system HATES and the Defendants, judges, lawyers, media

and the system all portray me as the issue as opposed to Durrani, the hospitals, Medical Protective, the legal system and the court system. It is pathetic.

38. Defendants know if they break me or break the Duranni victims, they will break this most righteous cause.

39. Defendants are in fact co-conspirators with Medical Protective, the hospitals, Durrani, and Ohio's large law firms led by Dinsmore.

40. The lawyers representing Medical Protective, Durrani's insurer, in open court, told Judge Barrett they are concerned I am the problem in resolving this matter. Why? Because I refuse as the victims' advocate to recommend to these victims that they should accept some low-ball pathetic number Medical Protective and Judge Barrett wants them to accept. In other words, Medical Protective and Defendants hate me because I will not do what they want in the face of unrelenting pressure.

41. It is no secret and has been voiced by the Medical Protective paid attorneys for Duranni, that I am the "problem" with resolution. However, that is not an issue for the Duranni victims because they want their trials and the fraud trial.

42. The Court system, the Defendants, the defense lawyers, and Medical Protective all have attempted repeatedly to turn me and the victims against each other. It is sick. It will never work. Why? Because I will never betray the victims and they will always support my efforts on their behalf. We are united in this most righteous of causes.

43. The Defendants are paid by taxpayer dollars which includes taxes paid by the Duranni victims.

44. Dante wrote in his "*Inferno*" that the lowest place in hell is for those who remained quiet when they should have spoken up. I am confident hell awaits the Defendants and their co-conspirators.

45. Thomas More is the patron saint of lawyers. He gave up his head on principle. The lawyers and Defendants, who are also lawyers, have no principles. All the Defendants would have readily supported Henry VIII's annulment.

46. Edmund Burke is credited with: "All that is necessary for evil to triumph is good men do nothing." Defendants are bad men and women who do nothing.

47. Emerson wrote: "Good men should not obey the law too well." I agree as the law is so corrupt.

48. The KBA Character and Fitness Committee, when I channeled Morgan Freeman ala "*Shawshank Redemption,*" just stared at me when after asking me if I would follow ALL their rules, I asked them: "Have you not heard of Rosa Parks?" There are no more absurd rules than the rules of bar associations. I detail them in **Exhibit 1.**

49. At this KBA hearing, I warned them. Reinstate me and keep me chained. Do not, and I shall be free to speak the truth about the legal system, lawyers, and judges from the mountain tops.

50. Shakespeare wrote in Julius Caesar: "A coward dies a thousand times before his death, but the valiant taste of death, but once." The Defendants are walking zombies.

51. Martin Luther King, Jr. warned "Injustice anywhere is a threat to justice everywhere." Aye. It is.

52. The rules of the legal and court system prohibit lawyers from speaking out against lawyers and judges. The false assertion is it would bring disrepute upon the system. The

system and Defendants bring dishonor upon itself. How stupid is it to prevent those who know from speaking out? I know of no profession who has this same rule. Ever hear a rule that plumbers and cosmetologists cannot bad mouth each other?

53. The entire legal system is made to control lawyers as the large law firms want them controlled.

54. William Gladstone is the one who declared: "Justice delayed is justice denied." Former Chief Justice Maureen O'Connor touted that maxim in a law review article she wrote as Chief Justice. Yet she was content with Durrani victim trials going one at a time for 25 years. Defendants protect the maxim. "We delay justice so there is no justice".

55. The legal establishment clamors: "We are a country of law." "We have the Rule of Law." What a bunch of balderdash from flap mouthed dotards.

56. I attach as an Exhibit a memorandum I wrote about how much injustice there is in the country which the so-called legal system allows. **Exhibit 2.**

57. I have been an active participant and observer in the events of this region since the age of eighteen when I began paying attention, reading newspapers, watching the news, and participating in politics, law, and business. The manner in which the politicians, media, and so-called business leaders all claim how wonderful this region is while remaining silent on Durani victims proves their hypocrisy. All of them remained silent while Durrani butchered his victims. They remained silent when it came to light. So-called pillars of the community sat, and sit, on those hospital boards. All these prattling swag bellies have remained silent even after all the truth and all the struggle.

58. Today I condemn them all. I am here today to scorn them all. I am here to today to judge them all wicked cowardly wagtails. The facts condemn them. The truth condemns them.

8

The Duranni victims condemn them. I condemn them. A just God will condemn them to the eternal fires of hell. I hope all of them, suffer a painful and miserable death by spinal cancer.

59. I carry this burden of the Duranni victims every day 24/7/365. It never leaves me. For thirteen years, I am always thinking and taking action. I tell everyone on our team that all I care about and the most important fact for me is that I and the victims always stay together. In the end, we can't lose if that is always the case. And it will be.

60. For thirteen years I have not had a day off from this cause. The victims have not had a day off from their pain. The Defendants and their co-conspirators have not had a day off their privileged tax supported country club lifestyle.

61. No one should ever have had to explain to these Duranni victims what I have had to try to explain for over thirteen years based upon the actions and inactions from the Defendants.

**BACKGROUND FACTS**

62. The story begins with a spine surgeon who performed unnecessary spine surgeries on the unsuspecting 580 victims. After his 2013 federal indictment for performing unnecessary spine surgeries, Dr. Atiq Durrani fled to Pakistan, his home country. Over thirteen years from the date the 580 victims individually filed their lawsuits, the Ohio Supreme Court has refused trials to hundreds of the victims. It probably is a first in this nation's history. Over 200 cases filed in 2013 remain untried. Those tried were tried from five to thirteen years after filing.

63. Based upon their being tried one, two or three at a time, the trials will take another ten to twenty years to try. The Ohio Supreme Court, led by the now retired Chief Justice, Maureen O'Connor, followed by the current Chief Justice Sharon Kennedy, have refused

9

to take the necessary action to try the cases expeditiously by ordering: large group trials and applying the proper judicial resources. It is all based upon irrational evil intent.

64. The Supreme Court assigned the cases to one retired judge who tries them the best he is able. Judge Guy Reece is literally the only judge in the history of this ordeal who has been fair to the Durrani victims. When I mean fair, ruling for and against based upon law and facts, not to assist the cause of those responsible for the harm to the Duranni victims.

65. On order of Chief Justice O'Connor, Judge Reece, replaced fourteen Hamilton County Common Pleas Judges who had the cases. Rather than have fourteen judges, the Durrani victims were assigned one.

66. The Durrani victims have tried every possible legal recourse to resolve delay with no Court providing relief. The harm caused by all the corruption is ongoing, as is the corruption. The Duranni victims previously filed a federal action before Judge Barrett on the trial issue. He claimed it was an Ohio state matter. The Duranni victims filed a Writ in state court which Former Chief Justice O'Connor denied. Therefore, the Duranni victims are left languishing and lost without a remedy. The public should be outraged. The problem? They do not know.

67. One might ask how has this happened? The reason is that the medical establishment and large law firms "own" the Defendants and the Ohio media who remains silent.

68. In addition, the premise of this lawsuit is another reason. The Defendants, the medical establishment and the legal establishment, are more concerned about me versus the crimes and conduct of Durrani and Medical Protective.

69. Should not a civil litigant in the United States and Ohio, have a constitutional right under the First, Seventh and Fourteenth Amendment to a trial within a reasonable time frame?

At the time of this filing, it appears the Supreme Court of the United States has never considered and ruled upon the issue.

70. Based upon Ohio's Rules of Superintendence, the Ohio Supreme Court concluded three years as a rational time to conclude the Duranni victims' cases.

71. The Ohio Supreme Court also has ruled their Rules of Superintendence are not binding upon them, but merely a "guide." More irrational rules.

72. But, the three years "guide" reflect what the Ohio Supreme Court believes is reasonable. In the storied history of American jurisprudence, there has never been such a total reprehensible disregard to a group of citizens seeking redress in the Courts. It is truly incomprehensible. It is heartless, cruel, and evil.

73. There is an often-used description that law and justice is not the same. Do you know why? Because law is perverted by corruption.

74. The Ohio Supreme Court has wrought upon the Durrani victims the following painful realities:

A. From 2013 to now, over 102 victims have died since filing their lawsuit.

B. Victims and witnesses' memories have faded.

C. There have been two and sometimes three depositions of the victims based upon the time lapse of the litigation.

D. Victims have lost experts due to the twelve-year time frame due to age, stress, and professional career changes. This will be a continuing issue over the next ten years if nothing is done. The victims neurosurgeon expert is in his seventies. After paying and relying upon experts, the victims will have to retain experts to replace the retiring experts, which doubles the expert cost.

11

E. Estates for the deceased and the bankrupt victims who have become insolvent results in additional technical and legal obstacles and burdens.

F. Victims suffer every imaginable financial, physical, and emotional issue from the never-ending delay.

G. As the person who finances the litigation, I have the financial burden of continuing the litigation with funds of $1 to $2 million every year. To the chagrin and shock of the Defendants and their co-conspirators, I do. I will. And I always will until true justice is obtained for the Duranni victims.

75. The Sixth Amendment and subsequent case law established the "right to a speedy trial." In a remarkable historical omission, there has been a clearly defined civil application of "speedy trial" under the Seventh Amendment by the U.S. Supreme Court.

76. All of the following "catch phrases" espoused by the Courts and our legal system in self-righteous fashion have been ignored by the Defendants:

A. "Justice delayed is justice denied."

B. "Access to courts"

C. "Due process"

D. "Redress of grievances"

E. "Right to be heard"

F. "Unreasonable delay"

G. "All wrongs must have a remedy."

77. What is a rational and reasonable time frame for a civil litigant to have their "day in court?" It is not thirteen years and counting. Based upon the Ohio Supreme Court's so-called non-binding Rules of Superintendence, it is three years.

78. The victims of Dr. Durrani deserve a remedy, not a "too bad about your luck."

79. Only the Dr. Duranni victims who filed lawsuits in 2013, have not had their cases resolved by the Ohio legal system.

80. Durrani victims deserve compensation for the heartless, cruel, and unconstitutional delay. No rational and unbiased Ohio taxpayer would disagree. No court SHOULD disagree.

81. The Defendants' entire federal and Ohio court and legal system have disrespected, mocked, and laughed at me and the Durrani victims. It shocks the conscience. The denial of trials and delays serves no legitimate government purpose or function except cruelty. The Ohio Supreme Court even allowed the Ohio Appeals Court to be the final word on a matter by not granting Durrani victims review request of their claims in the Ohio Court of Claims. It amounts to legal gaslighting. The Ohio Supreme Court and Judge Michael Barrett expect the victims to accept the unacceptable. It is cruel apathy.

82. The day is coming when the world will know this story and the Defendants will be forever scorned by public opinion in Cincinnati, Ohio and the country.

## JUDGE MICHAEL BARRETT

83. Judge Michael Barrett expects the victims and I to accept what is unforgivable. He expects us to accept his doing nothing. He wants us to do nothing. I will no longer do nothing. What follows is all truthful facts which Judge Barrett cannot dispute.

84. On May 30, 2025, I filed a Complaint to the Sixth Circuit Court of Appeals against Judge Michael Barrett. I have not heard a response or a decision on the Complaint. I attach a copy of it as **Exhibit 3**. The Complaint is considered the only option of recourse by lawyers. However, based upon my past experiences, judicial conduct complaints "go nowhere."

13

85. In 2013, Judge Barrett and Magistrate Stephanie Bowman, despite the justified concern of the U.S. Attorney's office that Durrani was a flight risk to Pakistan based upon his yearly return there, and his father dying of cancer, allowed Durrani out on his own recognizance on federal criminal charges.

86. Magistrate Bowman served as Judge Barrett's law clerk before becoming a Magistrate Judge.

87. In December 2013, Durrani fled to Pakistan and never faced a jury on his criminal charges.

88. Medical Protective, Durrani's insurer, then used Durrani's flight as part of the lack of cooperation defense which the victims have successfully defeated. In other words, Judge Barrett and Magistrate Bowman delivered a defense to Medical Protective with no consequence for their folly fallen action.

89. Judge Barrett and Magistrate Bowman have never apologized to the Duranni victims for their foolish release of Durrani.

90. On May 8, 2025, David Drake wrote a letter to Judge Barrett pointing out he is the only Judge in the entire tristate requiring Alan Statman, Durrani victims' trial lawyer, contracted by Drake Law, make special certification on pleadings either he drafted the pleadings or state who drafted the pleading based upon Judge Barrett's animus towards me. No one has ever heard of such a requirement. **Exhibit 4.** Provide another example, Judge Barrett.

91. Judge Barrett sent **Exhibit 4** to opposing counsel in *Adams* the fraud case against Medical Protective.

92. In 2018, in the Durrani litigation, Judge Barrett "sat on" his ruling to allow Dr. Keith Wilkey to testify for the victims against West Chester Hospital to pressure the victims to settle with West Chester. Dr. Wilkey after extensive testimony outside the presence of the jury, was obviously qualified, but Judge Barrett knew that if he allowed Dr. Wilkey to testify, the victims would not settle and would have an opportunity to receive large verdicts against West Chester. Judge Barett did all this to assist West Chester, U.C. Health and their attorney, Walt Haggerty, to avoid a significant risk and to harm me and the Durrani victims.

93. In addition, West Chester had a diminishing insurance policy which paid attorney fees. After spending millions on attorney fees and being unsuccessful in being dismissed, West Chester still faced over 400 trials. Therefore, Judge Barrett forced the settlement to assist West Chester and Walt Haggerty in what I called the "Walt Haggerty bailout."

94. Judge Barrett ordered all the Durrani victims with a claim against West Chester under threat of contempt to his Court in 24 hours so he could pressure a settlement with West Chester.

95. In thirteen years, Judge Barrett has never ordered CEO Tim Kenesey of Medical Protective to Court or mediation. Why only the victims, Judge Barrett, and not Medical Protective?

96. By his irregular and inappropriate conduct, Judge Barrett forced a settlement upon the Durrani victims against West Chester. He unlawfully attempts the same to the Duranni victims for Medical Protective.

97. In the individual Durrani cases Judge Barrett tried based upon diversity in 2018 and since, he has NEVER finalized them for proper appeal causing a decade of delay in collection of verdicts. Why didn't you, Judge Barrett?

98. In the Medical Protective fraud case, *Adams*, Judge Barrett denied David Drake's Pro Hac Vice, who is a lawyer in good standing. Those are never denied. David Drake owns the contracts for the Durrani victims. **Exhibit 5.** Name all other Pro Hoc Vices you have denied Judge Barrett and what is the total of the ones approved?

99. Judge Barrett has set three one-year discovery periods in the Medical Protective fraud case, *Adams,* without a trial. Judge Barrett, if you are not going to dismiss the case, why no trial?

100. Judge Barrett ruled our expert against Medical Protective is not relevant testimony despite the handling of Medical Protective's claims is most relevant. Medical Protective did not disclose an expert witness during the discovery period.

101. Judge Barrett forced the Durrani victims to dismiss a case against Mike Lyon, a Durrani lawyer, based upon Lyon's lies. Judge Barrett demanded we do so with prejudice.

102. Mike Lyon lied to us and Judge Barrett on Lyon's promise to drive to Ft. Wayne and secure a settlement and we are trying to undo the dismissal to this day.

103. Judge Barrett has never apologized to the Duranni victims for this strong-armed judicial conduct.

104. Judge Barrett once by telephone, baselessly threatened Glenn Feagan, former owner of the Durrani victims' contracts, with his law license over the employment of me.

Judge Barrett, how were you going to take Glenn Feagen's law license? This was an illegal and unlawful threat.

105.   Judge Barrett has repeatedly publicly and privately defended former Cincinnati based class action lawyer, Stan Chesley, despite all of Chesley's conduct which led to his retirement in lieu of disbarment in Ohio after his disbarment in Kentucky. Yet, Judge Barrett is obsessed with what I may be doing which unlike Chesley's criminal activities, is lawful.

106.   Justice Deters worked for Stan Chesley and Judge Barrett tried cases with Stan Chesley before he became a judge. They are all close personal friends.

107.   Despite his George Bush appointment, Judge Barrett's sponsors to the U.S. Senate were Senators Schumer and Clinton at the request of Stan Chesley.

108.   Judge Barrett credits Justice Deters with his appointment. **Exhibit 6.** Justice Deters gave me a copy of this letter. It proves that my relationship with Justice Deters that he did share such facts. It is what he shared in part that supports this action.

109.   Judge Barrett wanted the Durrani victims represented by me before my retirement to also retain the legal services of his lawyer friend, David Kamp, who actually malpracticed his four Durrani cases by not naming Children's Hospital. I refused. David Kamp is now at Dinsmore. Dinsmore represented Children's Hospital. In addition, David Kamp formerly made his living from referrals from Dinsmore. David Kamp was Justice Deters' divorce attorney.

110.   Judge Barrett, or at least his clerks, have read a thousand of my emails to the Durrani victims he forced us to produce in *Adams*. He knows I did not say one negative word about him over thirteen years. He knows I have had to explain the most

17

unexplainable delays and developments to the victims. He forced us to turn most of these over to Medical Protective's counsel so they could be used against me. It is deplorable conduct.

111.      Judge Barrett ordered Drake Law to turn those emails over without considering the privilege protection agreement I had with Drake Law. **Exhibit 7.** He simply ignored it. He has violated my contract rights, and I bring a claim against him for that violation.

112.      Judge Barrett holds a Kentucky Supreme Court Order regarding what I can or can't do despite my now three years pending and ignored Motion before the Kentucky Supreme Court which proves the mistakes by the Court. Knowing they "messed up" the Kentucky Supreme Court will not admit it, they just sit on it.

113.      Judge Barrett is compromised by Medical Protective, Dinsmore Law and his brother, John Barrett of Western Southern who is friends with Warren Buffett, and Justice Deters, and all Barrett's friends from the Duranni related hospitals and law firms.

114.      Judge Barrett has engaged in an extra judicial effort to destroy me and the Durrani victims. He has acted outside his judicial office to do so. He has also used his judicial office in an unlawful and illegal manner.

115.      In *Adams,* Judge Barrett, despite three one-year discovery periods, limited the victims to ten depositions from Medical Protective representatives.

116.      Knowing a trial would end *Adams* one way or the other, Judge Barrett refuses us a trial or even a scheduling Order. He refuses to dismiss our claims too so that we could appeal. Instead, he keeps the Durrani victims in perpetual limbo. He has done so for five years and counting. It is the most cruel and malevolent conduct.

18

117.     Judge Barrett's defiance is based upon his knowing he has the protection of a lifetime appointment and judicial immunity. I challenge his immunity in this Complaint.

118.     Judge Barrett knows the Durrani victims have been rational in the past and tried to resolve their claims with Medical Protective who remained obstinate. There have been countless failed mediations. In thirteen years, over 25 probably, formal, and informal. Medical Protective has never made one offer on a single case and not one single offer in writing for all the cases. Despite this, to this day, Judge Barrett, even in recent months told Alan Statman that if Eric Deters was "out of the way" Medical Protective would "come to the table." Alan Statman informed Judge Barrett Eric Deters is not "going anywhere." Of course, Judge Barrett is simply attempting to help Medical Protective by getting Eric Deters "out of the way." "Come to the table" means nothing.

119.     The Duranni victims no longer want another useless mediation, they want their trial or their appeal which will result in their trial eventually after appeal.

120.     Based upon the Motion for Reconsideration on four cases, to force Medical Protective to pay verdicts, Judge Barrett must reverse himself on a critical issue. He will either do so or cause the Duranni victims more pain which we will endure and reverse at the Sixth Circuit. As usual, he sits on the motions.

121.     Medical Protective's paid lawyers convinced the Ohio Courts that a fraud claim is the same as a medical negligence claim when malpractice is involved. Then, Medical Protective claimed to Judge Barrett they should not have to pay any verdict where fraud and negligence was found against Duranni. It is truly insane. But, appropriate for this story. Medical Protective wants it both ways. They want the benefit of their argument for trials, but not for the coverage issue.

122.     Judge Barrett has ignored Judge Hogan's Order giving me my interest in the cases. **Exhibit 8.**

123.     Judge Barrett enjoys numerous and lengthy vacations rather than working. His reputation among attorneys is one of delay and lazinesss. No attorney ever does anything about it or calls him on it. I am. There is more I could share straight from Justice Deters, but I will use restraint.

124.     Judge Barrett double dips on taxpayers with retirement and Senior status.

125.     Judge Barrett ordered the production of my emails but has protected Mike Lyon's and Medical Protective's emails. While I produced a thousand, they, a few, heavily redacted. There is a pending issue on Lyon's emails.

126.     In 2023, during a conference call status report, Judge Barrett promised victims counsel a trial date in April 2024. This date was communicated to the Durrani victims and my creditors to devastating effect when it did not take place. It has been one of my more challenging explanations.

127.     Judge Barrett refuses our repeated formal and filed requests for a scheduling Order. This is not normal or appropriate for a Judge.

128.     Pending for months and months, the following are fully briefed in *Adams* 1:20-Cv-00170- MRB and not ruled upon:

A.  Motion to Substitute Party from Death #271

B.  Motion to Substitute Party from Death #270

C.  Motion to Quash/Mike Lyon #269

D.  Motion to Amend Fifth/Recission Fraud

E.  Motion for Sur Reply/Plaintiffs #236

F. Motion to Dismiss Third Amended Complaint/Med Pro #223

G. Motion to Compel on Durrani/Med Pro Agreements "After The Fact"

H. On December 3, 2024, the victims asked for eight short depositions on those involved in the recission issue. The request was ignored.

I. There is no outstanding discovery the Durrani victims owe to defendants. None.

129.     What follows is the exact language we gave to Judge Barrett and opposing counsel to assist Judge Barrett on ruling on the above and discovery issue. To date, Judge Barrett has ignored all of it.

### EXACT LANGUAGE

We filed on February 2, 2025, Plaintiffs' Discovery Status Report. It is only five (5) pages. (Doc #256). The actual questions and answers are in Tab #31.

That summarizes most of the pending issues and general arguments. This document updates and summarizes all which is pending.

To assist the Court, we outlined the discovery they will not answer and the pending issues in *Adams*.

The following is written discovery which Medical Protective will not answer:

### PLAINTIFFS 6th SET OF DISCOVERY

We previously asked informally by letter for Defendants to produce proof that all Plaintiffs' demands from 2013 to now were provided to Tim Kenesey, the ultimate decision maker as discovered during his deposition. Please formally respond.

**RELEVANCE: If all our demands were never sent to Tim Kenesey, this supports our fraud claims. By his 2023 testimony, he is the final decision maker.**

21

There is not one single correspondence after verdict to counsel to Medical Protective in any of the prejudgment interest discovery. Produce all post-verdict correspondence with defense counsel for Dr. Durrani or admit it has been destroyed or no longer exists.

**RELEVANCE: We have a right to discover what the lawyers are informing Medical Protective of and vice versa after a trial loss or win. We have been provided what is sent before trial.**

## PLAINTIFFS 7th SET OF DISCOVERY

Produce all QRR regarding Durrani reference on page 38 of Jennifer Schlosser's deposition.

**RELEVANCE: These are relevant reports we have the right to have.**

Produce all video and written reports, including his remarks, that Warren Buffett made in Fort Wayne, Indiana after Berkshire's purchase of Medical Protective as referenced by Jennifer Schlosser.

**RELEVANCE: This is relevant as to what would be the overall policy and vision of Medical Protective which may relate to claims handling.**

Produce the same in #2 for Warren Buffett's speech in Chicago, Illinois as referenced by Jennifer Schlosser.

**RELEVANCE: This is relevant as to what would be the overall policy and vision of Medical Protective which may relate to claims handling.**

Produce the same in #2 for Tim Kenesey at all "highlight" and "quarterly leadership updates" from 2009 to the present as referenced by Jennifer Schlosser.

**RELEVANCE: This is relevant as to what would be the overall policy and vision of Medical Protective which may relate to claims handling and Schlosser claims Durrani was mentioned.**

## PLAINTIFFS 8th SET OF DISCOVERY

On February 24, 2018, at Durrani's deposition, we asked whether he received our requests to depose him. Medical Protective paid counsel for Durrani instructed him not to answer. **Exhibit 8.**

**RELEVANCE: This is relevant to fraud and would be new evidence.**

Produce all documented proof from 2013 to the present indicating Durrani was informed of any of our deposition requests and what his response was. This includes all correspondence from the law firms to Durrani and his responses.

**RELEVANCE: This is relevant to fraud and would be new evidence.**

## PLAINTIFFS 9th SET OF DISCOVERY

Produce any and all written agreements between Medical Protective and Dr. Atiq Durrani before he fled the United States and since he left the United States.

**RELEVANCE: We just thought to ask this. It could be most revealing. It is revealing Medical Protective just can't say no.**

Describe any oral agreements between Medical Protective and Dr. Atiq Durrani before he fled the United States and since he left the United States.

**RELEVANCE: We just thought to ask this. It could be most revealing. It is revealing Medical Protective just can't say no.**

Produce the same for any and all agreements between Medical Protective and Mike Lyon and/or Lindhorst & Dreidame.

**RELEVANCE: We just thought to ask this. It could be most revealing. It is revealing Medical Protective just can't say no.**

Produce the same for any and all agreements between Mike Lyon and/or Lindhorst & Dreidame and Dr. Atiq Durrani.

**RELEVANCE: We just thought to ask this. It could be most revealing. It is revealing Medical Protective just can't say no.**

Produce all emails and correspondence to and from Rick Porotsky and/or Dinsmore and Dr. Durrani.

**RELEVANCE: None of these would be privileged. Rick Porotsky does not represent Durrani. On the record, Rick Porotsky claims he has corresponded to Durrani.**

Produce the names of the Medical Protective employees who told Rick Porotsky the following:

In Rick Porotsky's Affidavit of Disqualification of Judge Reece he stated:

"Over time, Judge Reece has exhibited sympathy for the Durrani Plaintiffs at the expense of Dr. Durrani's defense at trials. For example, MedPro has informed me that Judge Reece: (a) has repeatedly expressed surprise, and apparent disappointment, when a defense verdict is rendered in Durrani trials, such that he then confronts juries (after their verdict); and (b) tells them about inflammatory evidence outside of the record (items that appellate courts have excluded, reversing Judge Reece) about Durrani's indictment and flight."

**RELEVANCE: If Lyon and Company is reporting this, this further supports the tri-partite fraud.**

Produce all written communications relative to #6.

**RELEVANCE: If Lyon and Company is reporting this, this further supports the tri-partite fraud.**

**Judge Barrett refuses to compel Medical Protective to answer any of the above. He sits on it. It is "criminal."**

130.    Our federal fraud case, against Medical Protective, *Adams*, was filed February 29, 2020.

131.    Medical Protective filed a Motion to Dismiss. It was fully briefed for over a year before it was finally ruled upon by Judge Barrett.

132.    Judge Barrett dismissed all claims except fraud in the "lack of cooperation defense" and civil conspiracy in that fraud in lack of cooperation. This was September 2022.

133.    Judge Barrett's own words which follow are in his decision overruling the Motion to Dismiss in *Adams:*

## FRAUD & CONSPIRACY

The Court covered Fraud and Conspiracy on pages 30 to 35 of the Opinion and Order (Doc. 71) The Court cannot retract its September 29, 2022, decision on the current claims.

### Fraud

To establish a cognizable claim of fraud under Ohio law, a claimant must prove the following six elements: "(a) a representation or, where there is a duty to disclose, a concealment of fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) an injury proximately caused by the reliance." *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003) (quoting *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 570 N.E.2d 1076, 1083 (Ohio 1991)). "The elements of the claim are conjunctive, and accordingly all of them must be shown." *Id.* (citing *Schwartz v. Capital Sav. & Loan Co.*, 56 Ohio App.2d 83, 381 N.E.2d 957, 959 (1978)). In addition, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for actions sounding in fraud: "a party must state with particularity the circumstances constituting fraud or mistake." Accordingly, a plaintiff must also: "(1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the statement fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253 (6th Cir. 2012).

Defendants argue that Plaintiffs have not alleged damages proximately caused by any reliance on any alleged fraud because Plaintiffs have all received favorable verdicts on

their underlying medical malpractice claims. However, as the Court reads Plaintiffs' claim, the fraud is based on Defendants' false statements that Durrani refused to participate in his defense:

638. Medical Protective attempted to take advantage of Durrani's flight by feigning lack of cooperation by Durrani and challenged coverage in a federal lawsuit.
644. In a March 13, 2020, email to Durrani, Richard Marcello continues Medical Protective's charade of non-cooperation, writing that because Durrani refuses to cooperate, he is in breach of his policy. However, Durrani has always adamantly denied ever not wanting to testify in any case or deposition. . ..

(Doc. 30, PAGEID 742). Plaintiffs allege that Medical Protective knew the statements that Durrani refused to participate were false:

Following his flight to Pakistan, Medical Protective obstructed Plaintiffs counsels' efforts to depose Durrani for over five years of pending civil litigation, claiming Durrani did not want to give depositions when Medical Protective knew that he actually wanted to be deposed in cooperation of coverage.

(Doc. 30, PAGEID 659). The alleged injury which resulted from Plaintiffs' reliance on these statements is that:

Deters Law has had to fight a federal insurance coverage battle against Medical Protective based upon the fraudulent lack of cooperation claim. The issue was used against Deters Law and Plaintiffs in settlement discussions. The issue delayed trials in 2015, 2016 and 2017 in front of Judge Ruehlman. Plaintiffs who had a trial were cheated out of the deposition.
. . .

Not having Durrani's deposition has affected trial strategies, witness arrangements, trial preparation, and presentation. Plaintiffs had to expend extraordinary attorney time fighting federal declaratory action. Also, Plaintiffs spent extraordinary attorney time pursuing a sanction against Durrani for not giving a deposition to no avail.

(Doc. 30, PAGEID 741, 746). In addition, Plaintiffs allege:

The delay in the resolution of this case has caused egregious harm to Plaintiffs. In addition, Plaintiffs have incurred unnecessary legal fees protecting and advancing their interests. The Durrani Plaintiffs have suffered emotionally, physically, and financially. Fifty-nine (59) Plaintiffs have already died before being allowed their day in court. Over 50 additional Plaintiffs have had to file bankruptcy awaiting their trials and not being offered any compensation by Defendants for their obviously meritorious claims against their insureds, Durrani and CAST.

(Doc. 30, PAGEID 657).

26

The Court finds that based on these allegations, Plaintiffs have adequately plead a claim of fraud. Therefore, Defendants' Motion to Dismiss is **DENIED** as to Plaintiffs' claim for fraud under Ohio law.

**Civil Conspiracy**

In Ohio, the tort of civil conspiracy is defined as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." Kenty v. Transamerica Premium Ins. Co., 1995-Ohio-61, 72 Ohio St. 3d 415, 419, 650 N.E.2d 863, 866 (Ohio 1995) (quoting LeFort v. Century 21–Maitland Realty Co., 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645 (Ohio 1987). "The malice involved in the tort is that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." Williams v. Aetna Fin. Co., 83 Ohio St.3d 464, 700 N.E.2d 859, 868 (Ohio 1998) (citation and quotation marks omitted). Moreover, "[a]n underlying unlawful act is required before a civil conspiracy claim can succeed." Id.; see also Morrow v. Reminger & Reminger Co., L.P.A., 183 Ohio App.3d 40, 915 N.E.2d 696, 711–12 (Ohio Ct. App. 2009) ("A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy.")

Plaintiffs allege that Medical Protective conspired with various attorneys and law firms to perpetuate the fraud based on Defendants' false statements that Durrani refused to participate in his defense:

549. On December 19, 2013, Marvin Benson, Sr. Claim Specialist for Medical Protective, sent Durrani a letter in the Pierce case, copied it to Michael Lyon and David Bendel, VP/Regional Manager of Medical Protective and states: "It has come to Medical Protective's attention that you will not be in attendance at this trial as you are no longer in the United States and have returned to Pakistan." How did that come to his attention? Michael Lyon. The fact this letter was copied to Michael Lyon will reveal itself as critical.

550. On December 23, 2013, there was an email from Durrani to Marvin Benson: "Mr. Benson. Thank you for the letter. At this time, I will not be able to return back to the U.S. and unfortunately will not be able to assist in any way in defense of these civil cases. I regret the inconvenience caused in this regard. AD." (Emphasis added). This email is very legalese. Civil cases? Of note, it's not copied to Michael Lyon like Marvin Benson's December 19, 2013, letter. Plaintiffs assert and allege Michael Lyon wrote this for Durrani and purposefully did not copy himself. This is one of the many subject matters at his depositions in 2018, Michael Lyon actually wrongfully instructed Durrani not to answer solely to protect himself.

551. On January 2, 2014, Medical Protective's legal counsel, Steven Janik, filed a Complaint for Declaratory Judgment in the United States District Court, Southern District

27

of Ohio, styled The Medical Protective Company v. Durrani, Case No. 1:14-cv-00005. In that lawsuit, Janik states: "Medical Protective retained the law firm of Lindhorst and Dreidame, LPA to defend Durrani and CAST in the Underlying Lawsuits." "By email of December 23, 2013, to Medical Protective, Durrani advised, "I will not be able to return back to the US and unfortunately will not be able to assist in any way in defense of these civil cases." "Durrani and CAST have failed to cooperate with Medical Protective and assist in the preparation and trial of the Underlying Lawsuits." (Emphasis added). The significance? Medical Protective is representing in federal court, that Durrani is NOT assisting in his defense. This would later to be proven a scam by all the Defendants.

. .

568. On May 13, 2014, Deters Law asked if Durrani will appear at his deposition. Michael Lyon responded by letter: "As requested, we have notified Dr. Durrani at his deposition that you recently noticed. As of May 13, 2014, we have not received any word from Durrani regarding the deposition."

. . .

572. On May 30, 2014, Michael Lyon wrote the Deters Law responding to 99 cases Durrani is noticed for deposition. They state: "We have advised Durrani of this." "He advises he will not be available." He also stated: "In light of this advice, as was the case in the previously noticed deposition, we shall not insist that you go through the formality of arranging for a court reporter in Pakistan, having the reporter be there and you, personally attend the deposition to prove he is unavailable." The significance? It contradicts previous statements that attempt to communicate with Durrani have been fruitless. Durrani's lawyers always alternated between claiming communication with him and not, to suit Medical Protective's needs. During all his time in Pakistan, Durrani has worked at Doctors Hospital, had a cell phone, home phone, work phone and email. He's never been unreachable.

(Doc. 30, PAGEID 723-24, 728).

The Court finds that based on these allegations, which for purposes of a motion to dismiss, this Court must accept as true, Plaintiffs have adequately plead a claim of civil conspiracy based on the underlying tort of fraud. Therefore, Defendants' Motion to Dismiss is **DENIED** as to Plaintiffs' claim for civil conspiracy under Ohio law.

134.     **Since this ruling, our claims have only become stronger:  The depositions, the claims files, the documents and Medical Protective's ongoing continued conduct. On the substantive claims, the Court cannot grant summary judgment for Medical Protective. The Court can grant summary judgment for us on liability and causation.**

## BASED UPON ALL PENDING MOTIONS THE FOLLOWING CAUSES OF ACTION REMAIN IN *ADAMS:*

A. Intentional infliction of emotional distress

A. General fraud

B. Constructive fraud and public policy fraud

C. Fraud in lack of cooperation defense

D. Civil conspiracy

E. Spoliation of evidence

F. Claim under ORC 2307.60

G. Tri-partite Fraud

H. Settlement fraud

I. Detrimental reliance/promissory estoppel

J. Fraud in recission (Claim from this Amendment

135.     **Exhibit 10** is Judge Reece's Decision in the Medical Protective recission case and the basis for the Durrani victims Fifth Amendment Complaint in *Adams.*

136.     The Decision details the basis for his granting the Intervening Defendants Motion for Summary Judgment finding the policies "are in full force and effect and subject to Intervening Defendants claims." The Durrani victims are the same as the Intervening Defendants in the state court case. The following sections of Judge Reece's decision are relevant here:

A.     The Default Judgment Entry further stated that "[d]ue to their default, [Dr. Durrani and CAST] are bound by the decisions made by this Court on any motion and/or by any judgments rendered following a trial involving [MedPro] and Intervening Defendants."

29

B. "The matter at issue in this action is one of critical importance as it affects hundreds of Durrani plaintiffs, and it was critical for this Court to be provided with all the evidence necessary to make sure that its decision is the correct one."

C. "**Laches** is typically an equitable defense, requiring proof by the person asserting the defense of (1) an unreasonable delay or lapse of time in asserting a right; (2) the absence of an excuse for the delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice."

D. "The elements necessary to establish an effective **waiver** are an existing right, knowledge of the right, and an actual intention to relinquish the right." 42 Ohio Jurisprudence, Estoppel and Waiver, § 90, citing Am. Jur. 2d, Estoppel and Waiver, § 187. A waiver may be made by express words or it may be implied from a party's acts or conduct. *White Co. v. Canton Transp. Co.,* 131 Ohio St. 190, 198; *Brokcanp v. Linneman,* 20 Ohio App. 199, 201-202 (1s'Dist. Hamilton County). A waiver also may arise from a party's failure to act, *Scott v. City of Columbus,* 109 Ohio St. 193, 206 (1923); *Meyers v. Hoops,* 12 Ohio Op.2d 481, 74 Ohio L. Abs. 280, 1995 Ohio LEXIS 675 *10.[3] A waiver also may arise if a party engages in "conduct that is inconsistent with that right." *Gembarski v. PartsSource, Inc.,* 2019-Ohio-3213 (2019), ¶ 24."

E. "A prima facia case for **equitable estoppel** requires a claimant to prove four elements: (1) that the party sought to be equitably estopped made a factual misrepresentation, (2) which is misleading, (3) which induces actual reliance that is reasonable and in good faith, and (4) which causes detriment to the relying party."

F. "Having reviewed the evidence submitted by the parties in support of their cross-motions for summary judgment, this Court concludes that there was no justification for MedPro to wait as long as it did before it raised the claims that it is now raising in this action, that **Intervening Defendants sustained material prejudice as a result of that delay**, and that, therefore, this Court concludes that Intervening Defendants are entitled to summary judgment by virtue of the doctrines of laches, waiver, and equitable estoppel."

G. "As to the doctrine of **laches**, Intervening Defendants have proved, by a preponderance of the evidence that (1) there was an unreasonable delay or lapse of time by MedPro in asserting its right; (2) MedPro had no excuse for the delay; (3) MedPro had knowledge, actual or constructive, of the injury or wrong that Intervening Defendants suffered as a result of its conduct and its delay in asserting its rights; and (4) **Intervening Defendants were undoubtedly prejudiced by MedPro's delay in asserting its rights in this case.**" *Fisher,* 2015-Ohio-2384, ¶ 13, citing *United States Playing Card Co.,* 119 Ohio App.3d at 603."

H. "As to the doctrine of **waiver**, Intervening Defendants have proved that MedPro waived its right to bring the claims it is now bringing as the evidence shows that MedPro had an "existing right," had knowledge of the right, and an "actual intention to relinquish the right[,]" as "may be implied from [its] acts or conduct in not attempting to protect its right earlier than it did, *While Co.,* 131 Ohio St. at 198; *Brokamp,* 20 Ohio App. at 201-

202, or by its failure to act, *Scott,* 109 Ohio St. at 206; *Meyers.,* or by engaging in "conduct that is inconsistent with that right." *Gembarski, Inc.,* 2019-Ohio-3231, ¶ 24."

I.  "As to the doctrine of **equitable estoppel**, Intervening Defendants have shown that (1) **MedPro made a factual misrepresentation** by not pursuing the claim it is raising now earlier in this litigation, (2) MedPro's failure to pursue the claim they are raising now was **misleading** in that it led so many of the Intervening Defendants to pursue their actions that they otherwise may not have, (3) MedPro's conduct induced actual reliance on the part of the Intervening Defendants that was reasonable and in good faith, and (4) **MedPro's conduct caused detriment to the Intervening Defendants**. *Skyward Learning Servs.,* 2020-Ohio-1182 at ¶ 12; *MacDonald,* 2012-Ohio-5949 at ¶ 48, quoting *Blue Cross/Blue Shield of Ohio,* 79 Ohio App.3d at 379."

J.  "However, Intervening Defendants presented evidence in support of their motion for summary judgment showing that Dr. Durrani was engaged in a fraud scheme well before 2018. For example, seven lawsuits were opened against Dr. Durrani in 2012. Intervening Defendants' Exhibit 27, and Schlosser Deposition, Exhibit 5. On March 6, 2013, Eric Deters, who was then the lead-attorney for most of the Durrani plaintiffs, sent a letter to Dr. Durrani's and CAST's lead attorney, Mike Lyon, in which Deters stated that he was going to sue Dr. Durrani over 90 times \*\*\*." Schlosser's Deposition, Exhibit 1. MedPro's Vice-President of Underwriting, Jennifer Schlosser, knew that there were concerns related to claims that had been against Dr. Durrani prior to March 6. 2013. Schlosser Deposition, p. 20. Around August 2013, Schlosser determined that Dr. Durrani "was not insurable with MedPro" due to "the claim frequency [MedPro] identified as a concern as well as the letter [which Schlosser later said was an email] that [MedPro] received from Mary Benson[,]" Schlosser Deposition, p. 26, who was a "claims specialist for MedPro," *id.* at p. 38."

K.  "Moreover, even if it could be somehow said that MedPro cannot be faulted for any delay until sometime in 2018 when Claimants raised the Whistleblower letter, which MedPro contends, showed "indisputably" that Dr. Durrani was perpetrating a fraud scheme, the facts would still show that MedPro waited five *years* before bringing the claim it is bringing in this current action."

L.  "In this case, MedPro, without justification, **engaged in an unreasonable delay** in bringing the claim they are now bringing in this action."

M.  "However, this Court finds this argument unpersuasive, too, as it is clear that Intervening Defendants reasonable relied on MedPro's acts or failures to act, and **clearly have sustained prejudice as a result**."

137.  There has been an adjudication of the elements stated, and Medical Protective can not challenge them. Most important, Medical Protective knew at the time they filed their attempt to rescind the policies all which Judge Reece found against them.

138.  Judge Barrett gave the parties a year from October 2022 to October 2023 for discovery. We finished our depositions in June, four months early. Judge Barrett limited

31

us to ten depositions. Medical Protective asked for and took only one deposition during that year. One.

139.    Medical Protective then began making irrelevant requests and demands after the year of discovery. Judge Barrett allowed them to do so. Medical Protective took no action on these for the year of discovery including no Motions to Compel.

140.    Judge Barrett required me to produce all my emails to the clients over ten years to him for review after discovery was over. We did. Those emails reflect nothing relevant to our claims for fraud. They are updates to the Duranni victims.

141.    Meanwhile, the relevant emails, Medical Protective and their lawyers' emails to Durrani under a crime/fraud exception we are not allowed to read.

142.    In addition, Judge Barrett has not ruled in six years on the ten cases the Sixth Circuit sent back on cases he tried. This is most frustrating to the victims. How do I explain that to them?

143.    We are now five years past the case filing in *Adams*.

144.    Judge Barrett simply keeps the Duranni victims languishing with no rulings and no trial.

145.    Judge Barrett can just rule against us despite the facts and law being on our side and we will appeal. He has already delayed us this route by years.

146.    Judge Barrett can rule in our favor, set a trial date, and provide the Durrani victims their right to a trial.

147.    Judge Barrett refuses to even acknowledge in the *AZ Hauling* case regarding how res judicata should NEVER be applied unjustly. Regardless, the **Chronology** which follows later, details how res judicata is not the issue Medical Protective claims.

148.     On June 24, 2024, at 9:24 PM I sent to Judge Barrett and his law clerk, copying

all defense attorneys the following email:

*To:     Judge Barrett*
         *Grace*

*Copy:  Defense Attorneys*

   **RE:     Durrani Victims**

   *The purpose of this email is to express on the strongest of terms that the victims of Durrani represented by Drake Law have ZERO interest in negotiating with Medical Protective. ZERO.*

   *There will not now or ever be negotiations with Medical Protective until after a jury trial on the fraud case even if that must happen after an appeal of an erroneous decision.*

   *We shall litigate trial cases, obtain verdicts and collect what we can from those verdicts until the end of time.*

   *Alan Statman forwarded to me the forms Rick Porotsky drafted for him and the victims.*

   *Attached is my affidavit in response to those forms.*

   *Before Rick Porotsky claims that I am not authorized to send this email, as stated in my affidavit, the Durrani victims can take advice from their spouses, their children, their neighbors, their relatives, their friends, their barbers, the person who mows their grass and a stranger on the street.  Every single day in America those involved in litigation listen to those same individuals. They are listening to my advice which is we have had enough.*

   *Every one of the victims that Drake Law represents will be receiving this email and my affidavit, as well as, the 25,000 on my email list and the 300,000 of my social media friends and every member of the tri-state, regional and national media who ignore this story every day.*

   *The day is coming when the world will know what has happened. There is no bigger black mark on the legal and court system in the history of America. Television will finally get the job done. I only wish the process moved faster, but it is moving:  movie, documentary and scripted series. All three. They love the story that much.*

   *I communicate and have communicated with these victims for eleven years. I am allowed to. I know what they want and what they deserve, and they do not want to waste*

33

*one single minute with Medical Protective's bogus mediations. Over the last eleven years, there have been dozens of wasted so-called mediations.*

*I am a fully disclosed witness in Medical Protective litigation. I am the one who will tell the jury in the fraud trial everything that happened relative to the claims. I am the one person who has been there from the beginning.*

*Two lawsuits have now been filed by all the victims against Ricky and Dinsmore for tortious interference.*

*A lawsuit is also being filed next week against all the lawyers and law firms paid for by Medical Protective who have been trying the cases without ANY communication with Durrani.*

*A lawsuit is also being filed next week against the experts (whores) hired by Medical Protective in these cases.*

*A lawsuit is also being filed against the entire Ohio Court system under equal protection, due process, fraud and corruption.*

*I am all four riders on that pale horse. I am that "Law Abiding Citizen" who has had enough. My affidavit will be filed under seal for the record and full disclosure of my testimony since Ricky is too scared to depose me.*

*Chips fall where they may and I and the victims will act accordingly.*

***I have no intention of sending you future emails. This one was necessary to stop the illusion of any mediation which I am certain only comes about after our lawsuits against Dinsmore. Sometimes it seems no one reads all the evidence we have filed.***

149.     Judge Barrett never said a word to me or counsel. Yet, he continues, despite this email, to attempt to force the Duranni victims to cave rather than make rulings and hold a trial.

## JUSTICE JOSEPH DETERS

150.     I must tell my history with Justice Joseph Deters for purposes of this Complaint.

151.     Early in the litigation, I calculated we could use some Hamilton County "firepower." I first met Joe Deters, no relation and Hamilton County Prosecutor, at an attorney league softball game in the mid-1980's. Our team played his team at the Lunken

Airport fields and my brother Jed and I kept hearing the other players shout "Deters." We met on the softball field and had a good laugh. We would occasionally interact. I would also run into Joe's brother, Dennis at the Hamilton County Courthouse. He too practiced law. My grandfather checked our family tree and concluded we were no relation.

152.    My Dad invited Joe and his family to his annual Derby Party one year. Joe came with his first wife Missy and youngest son, Patrick, a toddler at the time. The Deters family dog bit Joe. Later that evening, a car in the driveway ran over the dog and killed him. The family joke at the dog's expense: don't mess with Joe Deters.

153.    Joe's grandfather was long time Hamilton County Sheriff and Democrat, Don Teehan. Teehan also refereed NBA basketball games. After law school, Joe began a political career which would take him from an assistant prosecutor under Simon Lies who famously prosecuted Larry Flint; to county clerk; to Hamilton County Prosecutor; to Ohio State Treasurer; and Hamilton County Prosecutor again. He has served as the longest serving Hamilton County prosecutor than anyone in county history.

154.    When I began doing radio shows on 700 WLW, I interacted with Joe more. Joe always gave Bill Cunningham the first interview on any high-profile case, so when I backed up Willie, I interviewed Joe.

155.    Joe always told me, "Damn, you're better than Willie." In reality, Joe and Willie, longtime friends, were two parts of a triangle, and I was never going to make the third side. It took years for me to come to this realization. This is even more odd when Joe would constantly tell me he had few real friends and I was one.

156.     Joe once held a fundraiser at the Montgomery Inn and asked me to introduce him. In front of an outdoor porch of judges and lawyers, I made up a funny story and everyone laughed. One of the judges there was Sylvie Hendon, a Family Court then a Court of Appeals judge and Joe's mother in law. Later on in our saga, she befriended me and we had lunch. She sought my help in keeping her daughter and Joe together amongst their marital problems. I tried to no avail. She would text me all the time about Joe's personal life problems. At one point, I had to choose between Team Hendon or Team Joe, I chose Team Joe. Joe is now married to WCPO Channel 9 Cincinnati news anchor, Tonya O'Rourke. Judge Barrett is now married to the former anchor, Carol Williams.

157.     At some point, Joe decided he needed to make more money than his prosecutor's salary. The law allowed him to go to "part-time," cut his salary in half and work in a law firm. Where did Joe decide to work? Stan Chesley's office. The man who was Mr. Class Action and hosted parties for President Clinton. The Hamilton County Republican voters became a little uneasy.

158.     While Joe was still affiliated with Stan, Stan's world caved in. When the Phen Phen victims sued Chesley in Kentucky, they secured a judgment for what became I believe $40 million. The Boone Circuit Judge, J.R. Schrand, found Chesley in contempt for not appearing and issued an arrest warrant. Joe Deters issued an Order to the Hamilton County Sheriff that he could not arrest Stan on the warrant. Have you ever heard of such a thing? No. But that's power in action and power we wanted. Unfortunately, we would never receive the Chesley treatment.

159.     While I reached out to Chesley, I also reached out to Joe. Chesley would tell me Joe didn't know what he was doing. Joe would tell me Chesley would drive him crazy.

36

160.     At the first morning meeting with Joe at the Fox 19 building, it was clear from the smell, his face, his eyes, his speech and his manner, Joe was intoxicated and not just a little bit.

161.     I informed Bill Cunningham of this fact. It was then Willie told me Joe had a severe alcohol problem, his closest friends tried interventions, he was often times publicly drunk, there were police encounters, he was in the middle of a divorce and his life was falling apart. Willie said "everyone" knew.

162.     I decided to choose the congenial drunk Joe over the rude and abusive Chesley. Over the years I interacted with Chesley, and I always found him an asshole of the highest order. He never gave a damn about anyone including his clients. Joe promised results. He also lived in the same condo complex as Judge Guy Guckenberger. I saw Joe had a friendly connection to the Republican judicial establishment.

163.     Joe and I would embark on communication by his personal email; private phone calls and texts; meetings at his condo; meetings at Pizza Hut across from his condo; meetings at restaurants, coffee houses, and later at his town home. Joe never took anything too serious and in candor, I thought we became friends. He is very likeable.

164.     Joe's downtown condo actually belonged to Stan Chesley.

165.     I began referring to Joe as my Air Force. I used this term because I called the young lawyers who worked on Durrani every day my Armored Division. Joe and I both liked the movie Tombstone. Joe wanted to be "Doc" and insisted I be "Wyatt." I also called Joe "The Breeze" because he never seemed upset about anything. Joe, an Elton John fan, also wanted to be "the Brown Dirt Cowboy" and me "Captain Fantastic." I

know that I certainly should have been "Doc Holiday" and not "Wyatt Earp." Yes, we acted twelve.

166.    Joe, Willie and I began having weekly breakfasts every Wednesday at Bob Evans in Kenwood. Willie would tease Joe about being my father or brother. From jail, a man who cut up his wife and put her in a garbage can at the curb actually was caught on the jail phone from the jail saying he couldn't hire me because I was Joe Deters' son.

167.    Joe Deters told me inside stories, including most personal stories about everyone: Judge Barrett, Judge Marsh, Judge Guckenberger, Judge Schweikert, Defense Lawyers, Defense Firms, Politicians, Chesley, Judge Dlott (Stan Chesley's wife), Judge Black, Alex Triantafilou, Greg Hartmann, Judge Powers, Judge Shanahan, Judge Hendon (his mother in law), Judge Mock, Judge Fisher, Judge Dewine, George Vincent, Judge Martin, Rob Portman, Justice O'Connor, Judge Winkler, Mike Dewine and Judge Kubicki, to name a few. I heard it all. All the dirty little secrets he knows, he told me.

168.    Joe planned a huge fundraiser at the Great American Tower downtown, home of Western Southern and the Lindner companies. Governor Dewine and Senator Portman came to speak. The host list included all the power brokers, including Dinsmore & Shohl attorneys. For $10,000, you could be a host.

169.    I decided to play a game with Joe he would lose. The game? How do you prove where someone really stands?

170.    I told Joe I wanted to be a host and planned to send $10,000. I wanted to see how Joe would react to my name being next to his friends at Dinsmore and all the others.

171.    You can't make this up. Joe said it was not necessary, and I could come for free. From his voice, to his manner, to his words, it was clear as a recently Windexed window. Joe would be embarrassed by me being a host with the Dinsmore club.

172.    At one point, I proposed transferring my firm to Joe Deters. Fortunately, that never happened. We actually drove each other nuts. I would guess no one has ever cussed out the Hamilton County Prosecutor like I did. I couldn't take the lack of results. Make no question about it. It's illegal for a public official to use his public influence for economic benefit. But that's the entire "thing" Joe promised me. And I wanted it for these victims. The evil bastards I knew used all their "sources." These victims deserved someone. Joe just didn't care. He overpromised and undelivered. Despite repeated requests, he never even made it to one client meeting. Then he asked Willie to be in on all our discussions as if I couldn't be trusted.

173.    We did not want anything illegal; we wanted political influences.

174.    Joe's communication skills were awful. However, I soon learned the best information always came late at night on a drunken phone call.

175.    Despite repeated pleas for action, Joe failed the Durrani victims. Willie told me he believed Joe overpromised. I became convinced Joe would take credit for something he had nothing to do with and when something didn't happen, simply act like he tried.

*By April 3, 2019, I sent Joe a letter which summarized it all. It's all true and will shock you. Imagine if you hired him to help these victims and what follows is what happened:*

*Dear Joe:*

*I am a loyal and rational person. I enjoy using the Galileo example about reason. Despite his knowing the Earth orbited the sun, he had to confess to the Pope he was wrong. It is not fair to ask a rational person to accept 2 + 2 = 5. It's cruel actually.*

39

*I have been good to you. I am also not- Johnny come lately. I am grateful for jobs to Erica and Cooper and your assistance on several issues which arose. I keep track of everything. Thank you for having Mac meet Cameron. Also, you were a great help on that one Estate and the Cincinnati Bell issue. Also, there was the BS workers comp issue. You may have actually forgotten. I have not. I remember with gratitude.*

*However, in Durrani, it seems we suffer more harm from your recusals than benefit. We need more.*

*I was dumbfounded to learn at the Reds game Elyse by her own words "did a ton of research and wrote at least 10 decisions" for Judge Schweikert. All his decisions have been against us. How could you not know this? (Elyse is his daughter. This reveal came Reds Opening Day when by serendipity my wife and I sat behind Joe and his family).*

*From Facebook, its clear Elyse is very close to her mother and grandmother who hate me because I chose "team Joe." In addition, she worked for Judge Martin, who hates me. Your relationship with Judge Martin never helped us in Durrani. His few decisions were devastating.*

*Mary and I were speechless learning she was doing work for Schweikert. Steve Martin had to recuse himself from the cases. I'm sure he gave Elyse plenty of poison on us.*

*Then there is John who works for Barbiere who represents Judge Schweikert. That confuses me. (John is Joe's son.)*

*Then there is the following:*

1.  *No assistance despite repeated requests with Governor Dewine on our healthcare liens and our Medical Board lawsuit. You gave us expectations.*

2.  *Issues just sit in limbo and unknown in the First District. You gave us expectations.*

3.  *Your relationship with George Vincent and Alex T has not helped us in the least. (Dinsmore lawyers)*

4.  *Pat Dewine has been brutal. I feel like publicly telling the world what I know about him. I don't solely because of you which is silly because he doesn't help us.*

5.  *Your talk to Jim Simon every week. We paid him $40,000. He got us nothing including not even Judge Schweikert's son worked at Dinsmore. I'm convinced he sold us out.*

6.  *Pat Fisher has been horrible.*

7.  *Robert Winkler didn't sign the consolidation.*

40

8.  *Janitor (Brittingham) gets away with massive suborning perjury. You could have appointed a Special Prosecutor to shake him.*

9.  *Dlott has not ruled on my simply going back into Court. Judge Crawford let me in this current trial.*

10. *I was anxious and desperate to meet you and you won't unless Willie is there. That's odd. Make me feel yucky.*

*Based on all this, what rational person in my position has faith you truly want to do all you can for this cause? And, what does it mean when a friend ignores communications? Is that respect? Is that loyalty? Would Doc do that to Wyatt? I have been loyal. I remain loyal. I will stay loyal. Hell, I was willing to hand you the firm and the cases. I keep in confidence all our conversation and information. No one is receiving this letter. Just you and me. I wanted to lay it all out calmly. I need the best of you.*

176.    My letter failed. Nothing changed. Joe wouldn't even return calls to Glenn Feagan when I was in jail for contempt.

177.    The end would come in early 2020. I warned him I reached the "end of my rope." He never responded or tried to resolve our relationship. I must assume he decided he had enough of me. I decided to abandon Joe and even support his political opponent, Judge Fanon Rucker, a Democrat, despite my daughter and son in law working for Joe's office. Outspent, Joe beat Rucker. After the election, Joe laid off my daughter and son in law so he could hire a few judge buddies who lost their election, like Kubicki. I offered Erica and Cooper their jobs back, but both found jobs elsewhere.

178.    The straw which broke the camel's back was Joe ignored my repeated requests to simply obtain an Ohio state contact for help on resolving Medicaid liens. In April of 2020, I burned the bridge. I even told the public about his alcoholism and nicknamed him "Otis" from Andy Griffith's character. I decided Joe needed to pay a price for his betrayal.

179.    A lawyer for Strauss Troy sent me a letter once asking on Joe's behalf for part of one of our settlements. I lost it. Joe dropped the request. At one time, Joe would have had a nice pay day, but he lost the right when he failed us. He blew it, not me.

180.    "Breaking up" with Joe Deters resulted in Willie stopping communication with me. It was clear if I was not friends with Joe, I couldn't be friends with Willie. The last communication I sent Joe and Willie was a text with a photo of a burning bridge. That was in April 2020. I have not had one regret ending those relationships. It was more freedom. I always had to worry about their relationships with others. No longer. I had my own orbit and did not want to be in theirs. As you know, sometimes you do not know how you will feel about someone until they are out of your life. I am happier without Joe and Willie in mine.

181.    In 2015, I sat at the conference room table with Matt Hammer, Erica, my daughter, and Cooper Bowen, and I said, well, let's prepare the statute of repose challenge. There's 14 judges, maybe it'll be divine providence and we'll land Judge Ruehlman. Out of fourteen random common pleas judges, we landed Judge Ruehlman. And Judge Ruehlman ruled in our favor on the statute of repose.

182.    I asked Joe what the likelihood of this thing holding up in the Appeals Court and he told me it would. I asked, "Why is that? He said: "Well, Pat DeWine's my friend, Judge Fisher's daughter works for my office, Russell Mock I vacation with and he gave my son his golf clubs." Ruehlman handed us a victory on the statute of repose issue and fraud exception. Mock, DeWine, and Fisher were the three judge panel who wrote a First District Court of Appeals opinion blasting Ruehlman and reversed it all. Thanks, Joe. Thanks, Air Force.

.

183.     Since my "break up" with Joe Deters, he has done all he can to hurt our cause including encouraging Judge Barrett and Justices O'Connor and Kennedy, to harm our cause in retaliation against me for my Dad and me firing him.

## FORMER CHIEF JUSTICE MAUREEN O'CONNOR

184.     Retired Ohio Supreme Court Chief Justice Maureen O'Connor worked hard in her retirement with the Court's media team attempting to create a heroic legacy.

185.     O'Connor's comments to the last group of new Ohio attorneys she would swear in about justice and fighting for a cause were "puke worthy."

186.     On November 14, 2022, O'Connor told the new attorneys the following: "Countless fellow Ohioans and fellow Americans are disadvantaged and need legal advice. Think about how you can use your growing wisdom and expertise to help them." Of course, unless you're a Durrani victim.

187.     O'Connor's legacy push for her includes:

   A.  She served as Ohio's first woman Chief Justice.

   B.  She broke with her Republican colleagues on redistricting.

   C.  She voted in the majority on race, victim and justice reform cases. Really?

188.     O'Connor's goal is to make her an iconic justice for the ages. The truth is she is a fraud. Her real legacy is one of corruption and abject evil in the treatment of Durrani victims and others harmed by the corporate healthcare establishment.

189.     O'Connor's corruption includes the following:

   A.  Refusing to recuse herself in ruling on requests to recuse her by Durrani victims for bias and prejudice.

   B.  Not recusing Judge Schweikert from the Duranni cases.

43

    C.  Assigning all the Duranni cases to one judge.

    D.  Not following Ohio Supreme Court rules in requiring trials in three years for Durrani victims.

    E.  Being "bought" by over $2 million in medical, health insurance and large defense law firm campaign donations.

190.      In the *Elliot* case, she actually voted for Durrani and not the victims in a clear issue of Duranni's flight to Pakistan tolling the statute of limitations and repose.

191.      O'Connor thinks all her other contrived "justice" can make everyone forget how she's owned by corporate healthcare money.

192.      I hate her. I loathe her. And the world will know why. It is all detailed in my book "The Butcher of Pakistan." **Exhibit 1.**

193.      Justice O'Connor also attempted to use her influence over the Ohio Disciplinary Counsel to destroy the Duranni victims and me. This included her ordering baseless investigations of attorneys on our team.

### CHIEF JUSTICE SHARON KENNEDY

194.      Justice O'Connor replacement Sharon Kennedy is equally owned by the same group of hospitals, law firms and insurance companies. Kennedy not only voted with O'Connor, she even disagreed in not reconsidering the *Elliot* decision. Kennedy now has millions in her campaign coffers from the same groups who gave it to O'Connor.

195.      The Hamilton County Republican Party with the law firms Dinsmore, Taft, Rendigs and Frost Brown Todd and others hosted an Annual Judicial Salute on May 1, 2025. I was banned from being there. They would not allow me in or to attend. They would not allow me to even buy a ticket. When I walked in, they made me leave. All the

Republican Ohio Supreme Court Justices were "saluted." Chief Justice Sharon Kennedy spoke. **Exhibit 9.** I wanted to raise my hand and ask some tough questions.

### WILLIAM SEITZ

196.　　　If there is any doubt of corruption in the Ohio legislature review the First Energy and Speaker Larry Householder scandal.

197.　　　Bill Seitz is Partner of Counsel with Dinsmore.

198.　　　Bill Seitz is the majority leader of the House of Representatives.

199.　　　Governor Dewine has appointed Bill Seitz to the Board of Tax Appeals from March 7, 2025 to February 8, 2031.

200.　　　Bill Seitz is retiring from the House.

201.　　　Bill Seitz worked at Taft Law from 1986 to 2013.

202.　　　Bill Seitz worked at Dinsmore 2014 to present.

203.　　　Seitz is on the American Legislative Exchange Council.

204.　　　In the 135th General Assembly HB 179 was passed to amend 2305.15 and exact 2307.241

205.　　　The entire legislative history is **Exhibit 11**.

206.　　　Bill Seitz is the person behind this bill.

207.　　　Bill Seitz is the so called Legislator of the Year.

208.　　　On October 24, 2024, the Ohio General Assembly passed House Bill 179. This was a highly politically motivated issue and lobbied intensely on behalf of hospitals and large for profit insurance companies. As a result of House Bill 179, Ohio will become a breeding ground for incompetent foreign doctors who commit malpractice. Once the civil malpractice suits begin to pile up, the negligent doctor returns to his home country.

Four years later, he/she can return to Ohio to start all over again in the medical field. Voila! The negligent doctor is off the hook, as is the hospital. His/Her medical malpractice insurer is also off the hook. The common man/woman who are stuck for the doctor's damages and egregious behavior are the citizens of Ohio.

209.    The undisputed facts are the following: *1. Our Durrani claims have been filed since 2013; 2. discovery has been completed; 3. every conceivable legal battle has been fought and a majority of those battles have been won by the Durrani victims (Plaintiffs); 4. a victory in Elliot v. Durrani,* 171 Ohio St.3d 213, 2022-Ohio-4190; *5. these matters are now set for trial; and, 6. most importantly, the proposed dismissal is blatantly contrary to* Article II, Section 28 of the Ohio Constitution *which states that the General Assembly cannot pass retroactive laws.*

210.    In summation, Ohio's Constitution prohibits the General Assembly from passing retroactive laws, which apply to events that happened before the law took effect. Specifically O Const II Sec. 28 Retroactive laws; laws impairing obligation of contracts states, in pertinent part, "[t]he general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts, but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable....." How under House Bill 179 which amended the absent defendant statute, R.C. 2305.15 be just and equitable to the countless and countless Durrani victims or any of the citizens of Ohio? Simply R.C. 2305.15 as amended cannot pass constitutional muster under Article II, Section 28 of the Ohio Constitution.

211.    The statute of repose is "a law designed to secure fairness to all parties," and "not an unjust and discreditable defense." *Antoon v. Cleveland Clinic Found.,* 2016-Ohio-

7432, Paragraph 19. The change to the law would not be designed to secure fairness to all parties. *Antoon*, supra. As a result of House Bill 179, Ohio will become a breeding ground for incompetent foreign doctors who commit malpractice. Once the civil malpractice suits begin to pile up, the negligent doctor returns to his/her home country. Four years later, he/she can return to Ohio to start all over again in the medical field. Voila! The negligent doctor is off the hook, as is the hospital. His/Her medical malpractice insurer is also off the hook. The common man/woman who are stuck for the doctor's damages and egregious behavior are the citizens of Ohio.

212.     Further, the retroactive application of R.C. 2305.11(B) to claims of minors, whereby a minor is required to bring an action for medical malpractice before attaining the age of majority is a violation of the due process provisions of the Ohio Constitution. *Mominee v. Scherbarth* (Ohio 1986) 28 Ohio St.3d 270, 503 N.E.2d 717, 28 O.B.R. 346. Additionally, in Ohio a 15-year statute of repose on product liability claims violates the section of the Ohio Constitution prohibiting retroactive laws; statute applies to causes of action which accrued before its enactment, and is not merely remedial, but affects substantive right to sue *Wells v. Thomson Newspaper Holdings, Inc.* (S.D. Ohio. 11-06-1998) 183 F.R.D. 225.

213.     Finally, retroactive application of new one-year statute of limitations for bringing intentional tort actions contained in workers' compensation statute violated Ohio constitutional proscription against retroactive laws in that use of shortened statute would extinguish worker's accrued right of action under former two-year statute of limitations. *See, Schneider v. Jefferson Smurfit Corp.* (Hamilton 1988) 42 Ohio App.3d 53, 536 N.E.2d 691.

47

214.     The Constitution of Ohio and relevant case law mandates that the Appellant's appeal is unequivocally without merit.

215.     In a recent case from the Fifth Appellate District *Pulley v. Voytko, 2025-Ohio-1587*, the court recently held "[s]ince there is no legislative statement that would indicate the statute [R.C., 2305] applies retroactively, the statute only applies prospectively. Therefore, based on *Pulley*, supra the trial court did not err in its previously entered decision. A copy of *Pulley* is attached hereto and incorporated herein by reference.

216.     The Fifth Amendment's Due Process Clause prohibits the government from depriving any person of "life, liberty, or property, without due process of law." Retroactive civil legislation violates due process if it is "particularly harsh and oppressive" or "arbitrary and irrational." *R.A. Gray & Co.*, 467 U.S. at 733 (internal quotes omitted). This is precisely the case here; therefore, Appellants arguments are again without merit.

217.     Simply R.C. 2305 as amended cannot pass constitutional muster under Article II, Section 28 of the Ohio Constitution. This Honorable Court's job is to apply the Ohio Constitution as written long ago. Accordingly, Dr. Durrani and CAST are not entitled to dismissal pursuant to Civ. R. 12(C) in this matter. As under the Ohio Constitution, relevant Ohio Case Law, recent Ohio Court of Appeals rulings, and The Federal Constitution and Federal Case, the Appellant's position is without merit.

218.     Judge Reece ruled in our favor on this issue.

219.     Medical Protective and Durrani have appealed. It is now pending in the First District Court of Appeals.

48

220.     Imagine, after willing the *Elliott* case, Seitz, Children's Hospital, Dinsmore and

the other co-conspirators swing into action in the middle of the Durrani litigation and

attempt to cut off all the rights of over 100 Durrani victims after thirteen years of

litigation. Seitz was paid a handsome illegal payment by Dinsmore and Children's.

### THE CONSPIRACY

221.     **The factual conspiracy is that all the Defendants, working together in**

**collaboration, desire to crush me financially so the Durrani victims capitulate for a**

**nuisance settlement or the Durrani victims turn against me based upon the ceaseless**

**delays. Neither has happened. Neither will ever happen. To date, Defendants**

**continue the effort.**

222.     From 2013 to now, the Defendants have used phone calls, meetings, texts, emails,

"cocktail party talk" and ex parte conversations to further their conspiracy against me and

the Durrani victims.

223.     Money has exchanged hands among the Defendants outside the legitimate

political process including illegal, cash and criminal contributions in furtherance of this

conspiracy. Justice Joe Deters informed me this takes place. Preservation of evidence

letters have been sent.

224.     The Defendants have acted outside the duties and responsibilities of their offices

thus losing their immunity.

225.     The Ohio Supreme Court has been repeatedly petitioned for timely trials and writs

have been filed. All have been denied.

226.     A federal action was filed. In that action, Judge Michael Barrett ruled he had no

jurisdiction. **Exhibit 12.** Ohio has said "sorry about your luck." Judge Barrett has said

"sorry about your luck". So, the victims and I are left with no recourse? I do not think so. This lawsuit is the recourse.

227.     The harm to the Durrani victims is immeasurable including emotional distress, anxiety, anger, frustration, more legal costs and altered legal status based on delays. The following are the deceased Durrani victims who have died over the last thirteen years:

1.   Allen, Jimmy
2.   Ashcraft, Diana
3.   Baker, Nicole
4.   Bayliss, Louise
5.   Benjamin, Antoinette
6.   Beyer, Leona
7.   Boggs, Barbara
8.   Boland, Nancy
9.   Borchers, Deena
10.  Botner, Gerald
11.  Brewer, Randy
12.  Britten, Carrie
13.  Brorein, Eileen
14.  Brown, Calvin
15.  Brown, James
16.  Bruce, Patricia
17.  Buskirk, Annette
18.  Byar, Michele
19.  Byrd, Timothy
20.  Couch, Barbara
21.  Couch, Jackie
22.  Dailey, Margaret
23.  Davis, Nellie
24.  Deaton, Ollie
25.  Decair, Holly
26.  Densler, Robert
27.  Earls, Darrell
28.  Ellington, Connie
29.  Ellington, Robert
30.  Falkner, Tony
31.  Favaron, Neil
32.  Fite, Troy
33.  Frazier, Joann
34.  Good, Donna
35.  Griffin, Susan
36.  Hall, Lisa

37. Hamby, Jade
38. Hatfield, Wayne
39. Hayes, William
40. Heffner, Heather
41. Helton, Denise
42. Helton, Evelyn
43. Hughes, Lois
44. Huser, Connie
45. Hyde, Irene
46. Jones, Dillon
47. Judkins, Phyllis
48. Juergens, Sarah
49. Kallmeyer-Ward, Linda
50. Keplinger, Michelle
51. Knauer, Christopher
52. Krech, Larry
53. Levandofsky, Hilary
54. Lilly, Adrian
55. Mains, Rhonda
56. Mains, Shirley
57. Marksberry, Paul
58. McClure, Jeff
59. Monroe, Junior
60. Neu, Gary
61. Newman, Marjorie
62. Nordeman, Gail
63. Pfetsch, Kenneth
64. Pickett, Heather
65. Potts, Jeff
66. Pridemore, Lawrence
67. Pritchard, Sharon
68. Quinn, Marcia
69. Ray, Todd
70. Reeder, Jane
71. Reifenberger, Holly
72. Reynolds, Harry
73. Riley, Jason
74. Rister, Donna
75. Rose Dorothy
76. Rosebery, Fay
77. Rueve, Kathrynn
78. Rutter, Carson
79. Scott, Delores
80. Shott, Gregory
81. Slone, Crystal
82. Smoote, Orris

83. Spivy, Billy
84. Stephens, Michelle
85. Tubbs-Hill, Clara
86. Underwood, Connie
87. Underwood, Kimberly
88. Watkins, Michael
89. Waxler, Elaine
90. Webber, Daniel
91. Wesley, Regina
92. Whalen, Violet
93. Wheeler, Lonnie
94. Wilder, Tamathy
95. Wilson, Jetton
96. Wilson, Paula
97. Wilson, Terry
98. Worley, Teresa
99. Wright, Leah
100.    Wyatt, Emanuel
101.    Yeakle, Veronica
102.    Young, Evelyn

228.    The above 102 victims have had estates set up. They will never testify on their

case. They will never personally receive justice. The Defendants know of these deaths.

They do not care.

229.    The following are the cases filed in Hamilton Common Pleas from 2013 through

September 26, 2023 which the Hamilton County clerk provided. It is public record.

| 2013 | 8,511 |
|-------|--------|
| 2014 | 7,578 |
| 2015 | 7,128 |
| 2016 | 7,186 |
| 2017 | 7,077 |
| 2018 | 6,906 |
| 2019 | 6,054 |
| 2020 | 4,589 |
| 2021 | 4,452 |
| 2022 | 4,760 |
| 2023 | 4,122 |
| **TOTAL** | **68,293** |

52

230.    The following is the chart of the cases filed in Common Pleas in every county in Ohio. It was provided by the Ohio Supreme Court. The "General" total by year is as follows:

| 2013 | 177,927 |
|------|---------|
| 2014 | 160,014 |
| 2015 | 151,493 |
| 2016 | 150,015 |
| 2017 | 143,985 |
| 2018 | 141,384 |
| 2019 | 139,140 |
| 2020 | 112,276 |
| 2021 | 112,555 |
| 2022 | 120,226 |
| TOTAL | 1,409,015 |

231.    The 580 cases of Durrani victims have been filed since 2013. Over 200 still need tried. Not one case was tried in three years after the first filings. Only the Durrani cases in all of Ohio since 2013 have not been wrapped up in three (3) years.

232.    In other words, out of the 4 million Ohio cases, only the Duranni victims trials remain unresolved.

### NUMBER OF DURRANI TRIALS BY YEAR

| 2014 | 2 |
|------|---|
| 2015 | 3 |
| 2018 | 11 |
| 2019 | 16 |
| 2020 | 8 |
| 2021 | 14 |
| 2022 | 22 |
| 2023 | 26 |
| 2024 | 19 |
| 2025 | 5 |
| **TOTAL** | **126** |

233.    Chief Justice O'Connor was, now Chief Justice Kennedy, responsible for anyone
seeking justice to have their trial in three years. They have chosen not to do so for
Duranni victims.

234.    Based on the trials being held to date, it will take ten more years to try these
cases. This means twenty five years total.

235.    We have tried seeking a remedy in every possible manner, in every possible way,
in every possible Court.

236.    Every wrong must have a remedy is another maxim which must be applied here.

237.    The Defendants have engaged in wholesale improper communication both
improper and ex parte.

238.    Joe Deters told me Dinsmore, who represented Children's Hospital, West Chester
Hospital, Christ Hospital in Duranni litigation and represents Medical Protective, gave
cash to judges and politicians outside the proper election process including these
Defendants with the purpose to harm the Duranni victims and myself.

239.    On May 1, 2024, National Law Day, I gave a speech to counter the legal
establishment Law Day celebrations and draw attention to the disgraceful and scandalous
conduct of the entire Ohio Court system, state and federal. The irksome way the victims
of Durrani have been treated by the Court system is unforgivable. The complete and total
disregard for the plight of the victims is a permanent stain upon the sanctimonious
institutions of law.

240.    All across this region and country on Law Day, the legal profession gather, hold
socials, speak at schools and converse with the media their self-praise and self-righteous
pontification about the law on National Law Day.

54

241.     Contrary to their self-aggrandizement, the indisputable truth is there is not a more lazy, corrupt, greedy and evil profession than the legal profession as demonstrated by Defendants. That profession victimizes the public every day on a grand scale.

242.     My life calling is to fight for people against injustice. My life maxim is a Theodore Roosevelt quote: "Aggressive fighting for the right is the noblest sport the world affords." I am engaged in that sport. Fortunately, I am blessed with the mental and physical attributes to do it. I have what my dear friend Colonel Randy McCafferty calls "push strength."

243.     For purpose of this claim, I must summarize the wholesale nightmare inflicted upon Durrani victims. Remember, these cases involve Dr. Durrani performing unnecessary spine surgeries on thousands of victims at Cincinnati area hospitals from 2005 to 2013.

244.     These victims face daily battles of excruciating pain and financial survival from their unnecessary spine surgeries and their aftermath.

245.     The story is of national significance because it illustrates corporate, not patient driven, healthcare and demonstrates how the legal system and court system is controlled by the same medical/legal establishment.

246.     I saved thousands of people from Durrani's butchering based upon publicly exposing him and providing prosecutors with the information necessary to criminally charge him. Thousands cancelled surgery or would have not surgery with him after 2013.

247.     102 of the 580 victims we represent have died waiting for their trials. It is true some of the 580 cases have been lost or dismissed in some fashion, but each and every one of these victims have some course of action pending.

248.     At the rate trials are scheduled, trials will be held for another 10 years for a total of 20 years.

249.     We have won a record number of verdicts, including the largest in Ohio history for a medical malpractice case. The total is $318,070,122.11. $53,003,145 is covered under the $42 million Durrani insurance policies. The Defendants know this.

250.     Covid delayed trials for nearly two years. The court system simply pressed pause rather than find a creative solution. Accept, not improvise, is their way of doing business.

251.     I pay millions for the team to try case after case including out-of-town experts flying in for every trial. It costs $1 to $2 million a year. No legal team in the country has ever done this. This is a heavy burden I carry and gives me standing to bringing these claims. I have an interest.

252.     This trial after trial for years is unprecedented in history. We have tried over 100 trials in five years. No legal team has ever done this.

253.     In medical malpractice cases, the defense wins 95% of the trials. We win 80%. This is 170% swing. Proof of the merit of the claims. No legal team has ever done this.

254.     We have won the largest medical malpractice verdict in Ohio history, $39 million, and received no media coverage or acknowledgment from a single lawyer organization.

255.     We won the only hospital negligent credentialing and retention verdict in Ohio history, against Children's Hospital, no media coverage or acknowledgement from a single attorney organization.

256.     There has probably been as much paid to the Durrani defense lawyers than the amount of coverage of $42 million. This is only $100,000 per victim. Verdicts average $1 million and Medical Protective has never made one offer on one case. We have secured

verdicts of over $300 million and nearly $60 million is covered under the policies. They have never put a single offer in writing and the most they have every offered verbally for all cases is $11 million.

257.     One other group of lawyers had 30 Durrani cases, they accepted only $1 million for all 30 of their clients in 2015. They sold their clients out. We have not.

258.     Our team of lawyers, staff and experts have made incredible sacrifices for the cause.

259.     Some of my dearest and closest friends have given me massive blessed financial assistance. I have loans which must be paid back.

260.     Two Chief Justices of the Ohio Supreme Court, O'Connor and Kennedy Defendants, elected with millions of dollars from the healthcare industry, insurance industry, hospitals and the law firms who represent them, have refused to follow the Court's own rules on concluding cases.

261.     In March of 2023, Deters Law was forced to transfer the law firm over a weekend from one lawyer to another to avoid the Ohio Supreme Court threat of shutting the firm down and seizing the Durrani cases all over the Court's efforts to help the defense. It is truly mind boggling.

262.     Our successful post-verdict judgments were not signed by Judges for over a year which delayed the appeals on our wins by a year or two.

263.     In American history, no judge has ever sealed jury verdicts. Judge Mark Schweikert sealed the Durrani victims' verdicts.

264.     The victims have faced unjust Ohio laws passed by the legislature without public knowledge including what is called the statute of repose. This requires a lawsuit to be

filed within four years of the malpractice no matter when a victim discovers the harm. It is unconstitutional but has been found constitutional by the Ohio Supreme Court. Most states have found it unconstitutional. Not Ohio. It is to protect their healthcare system donors. Justice O'Connor and Kennedy voted this constitutional.

265.     Medical insurance companies and Medicare and Medicaid approved the unnecessary surgeries and then have sought reimbursement through what are called medical liens on the settlements the victims obtain. The victims sued them all on this issue. Many insurance companies waived liens after the victims sued them. Many still refuse. These laws have been written and passed by Republican and Democrat Congressmen and state legislators. It is a disgrace Americans have no idea it exists until they pursue a case.

266.     Judge Schweikert ordered the victims to pay all the court costs even before a case is resolved. He wanted a $1 million deposit. This has never occurred in American legal history. The victims had to fight that off.

267.     Judge Schweikert entered a gag order not to protect jury pools as claimed, but attempt to shut me up about his failure to provide trials.

268.     With solid basis, as we learned more, the victims would file affidavits of disqualification against Judge Schweikert and Chief Justice O'Connor. 40 of them. The Chief Justice not only decided Schweikert's, but the ones against her. On Schweikert's she never granted one of them because Judge Schweikert would just say "I can be fair."

269.     The Ohio Supreme Court, after years of the victims making the argument, only enforced the law tolling all time frames based upon Durrani's flight to Pakistan after a motion for reconsideration. The statute is clear. You leave the state. Time tolls. Judge

Schweikert ignored it. The Court of Appeals ignored it. The Ohio Supreme Court only

woke up after first ignoring it. In 2024, the Ohio legislature led by William Seitz passed

the "Durrani Protection Act" and took away the tolling.

270.     Ohio Courts ruled fraud is the same as medical malpractice despite there being

different elements for the two claims including fraud having a four and not one year

statute of limitations. Yet, Judge Barrett did not apply this to the insurance coverage

issue.

271.     Ohio Courts ruled there is no fraud exception to the statute of repose. This means

a doctor or hospital can conceal the fraud for four years and win.

272.     Ohio Courts ruled a hospital's negligent credentialing and retention of Durrani

was the same as medical malpractice for purposes of the statute of repose. It makes no

sense. The elements of the two claims are completely different.

273.     The State of Ohio, despite having immunity, statute of limitations and statute of

repose defenses (1979 to 1997) agreed after a mere year to pay $60 million to 162 men

who were "touched improperly" by Richard Strauss, not for a lifetime of pain from an

unnecessary spine surgery. The State of Ohio is fought paying the 580 Durrani victims in

the Court of Claims. No settlement for the Durrani victims.

274.     After we won the appeal on our record $39 million verdict, Durrani's insurance

lawyers requested the Ohio Supreme Court review the matter and those attorneys

intentionally failed to copy us on their request in an attempt to ambush us in not fighting

their request to the Supreme Court. After using the proper email for our lead attorney

over five years, it just so happened on our largest verdict they used the wrong email

address. If we did that, we would be punished. Nothing will happen to them.

275.     When I faced criminal contempt for speaking out about delays in trials, Judge Schweikert ordered me to waive legal counsel. The Ohio Court of Appeals said nothing on this issue and upheld the sentence. Imagine if any Judge in America ordered a black man to waive his right to counsel and then sentenced him to 15 days in jail.

276.     Ohio caps non-economic damages at $250,000 or $500,000 if it involves a permanent injury to a vital organ. This means $500,000 is the most any of these victims can receive for a lifetime of pain and suffering from their broken spines.

277.     The juries in state Court are never told the truth about Durrani being indicted and fleeing back to Pakistan. Judge Schweikert would inform the juries Durrani chose not to be in Court. That's all.

278.     When some juries were told of just some of Durrani's credibility issues and lying, the First District Court of Appeals and the Ohio Supreme Court is requiring us to try those cases again.

279.     There are substances Durrani used in these surgeries called BMP-2 and PureGen. They increase the risk of cancer and cause throat issues. Durrani used BMP-2 in a manner not approved by the FDA, including in children. PureGen was never approved by the FDA. Despite clear law permitting a jury to consider an increase likelihood of cancer, Judge Schweikert never allowed it.

280.     The pharmaceutical and medical device industry have been given immunity by Congress. This applied to BMP-2 and PureGen.

281.     On the morning of a mediation in 2017 which could have settled all the cases, Chief Justice Maureen O'Connor removed Judge Robert Ruehlman from all the cases. He

had set all of the cases for conclusions by the end of 2017. This was eight years ago. It would all be over. This event is no coincidence.

282.    In addition, the defense lawyers appealed to the Ohio Court of Appeals and Ohio Supreme Court and lost the issue of consolidation of the cases with Judge Ruehlman. After losing, they simply appealed the same issue again. They lost again at the Court of Appeals. On the morning of our scheduled mediation, this time, despite ruling on the same issue earlier our way, the Ohio Supreme Court led by O'Connor and Kennedy reversed course. Coincidence?

283.    Rather than have the elected 14 Common Pleas judges handle the cases, Chief Justice Maureen O'Connor chose a non-elected Judge, Schweikert who ran the lobbying arm of the Ohio Supreme Court which supported pro-healthcare legislation. She took the Durrani cases away from 14 judges who had cases set for trial and gave them to one.

284.    Ohio and Kentucky allow anyone to defame an attorney without the lawyer being able to sue for defamation. Matt Hammer signed a declaration of facts under oath that I forged his signature to an affidavit of disqualification of Chief Justice O'Connor. It was a lie I proved. He signed the affidavit, not me. I was not allowed to sue him for defamation despite Kentucky using that lie as part of my reinstatement process. They claimed my lawsuit against him was witness intimidating. He was never prosecuted.

285.    There are 580 cases. The Court clerk charges $1 per page for any filing Judge Schweikert refused our solution of one case number for group filings to save the costs. Who has to pay these costs? The victims and me. Over a million dollars.

286.    Judge Schweikert accused me of bribing a juror with a potato chip and tampering with a jury by inadvertently leaving a paper on a Court bench.

287.     Judge Schweikert sanctioned one of our lawyers once for $60,000 in court costs claiming he made "claims" in the cases we should not have. It was and is ridiculous. He never applied this standard to Durrani's lawyers.

288.     Judge Schweikert, after the four hospital settlements actually attacked the fee agreements simply because our lawyer had not signed them. The clients signed them. After six years of work, he was trying to cheat Drake Law out of the fees. All the clients signed new agreements.

289.     I wrote a letter to every Ohio State legislator, Democrat and Republican about the statute of repose. Not one legislator responded. The Ohio voters would never want that law. Like so much law, it was passed based upon healthcare money, not the best interests of Ohio citizens.

290.     Have you seen those attorney commercials for the water contamination cases from the Marine base Camp LeJeune? Congress passed a special law after the fact to allow victims to sue past the deadlines and waive immunity. No such help for Durrani victims.

291.     Not one Congressman in Ohio or Senator has done anything for the Durrani victims. We asked them.

292.     The lawyers for UC Health, including Charles Pangburn III, blocked four doctors in 2009 from sending a warning letter to the Ohio Medical Board. This action could have saved thousands from Durrani. Pangburn is off somewhere enjoying his retirement. He has blood on his hands.

293.     U.S. News and Reports performs hospital rankings in a bizarre secret manner. This is the source of Cincinnati Children's Hospital touted #1 ranking. It is all done in a

public excluded secret fashion. If you tried today, you could not find or contact them. A hospital who allowed Durrani to perform unnecessary spine surgeries on children for money is #1.

294.    Cincinnati Children's Hospital used their reputation to hoodwink poor unsuspecting parents who carry guilt to this day.

295.    Durrani's lawyers ordered Durrani not to answer questions at his deposition in 2018 over 50 times and Durrani pled the Fifth 100 times and then the lawyers claim Durrani failed to cooperate with his insurance company. Judge Schweikert never allowed a jury to hear this.

296.    I am convinced Durrani's flight after his federal indictment was orchestrated by Medical Protective and the attorney they hired to represent him. Their motivation? Their attempt to cheat the victims out of $42 million in insurance coverage. No one in the media has ever recognized that it was my actions that saved this coverage for the victims by my recording a phone call with Mike Lyon, Medical Protective's lawyer.

297.    Every complaint with the Ohio Disciplinary Office we filed against the law firms defending these cases was stayed because it involved pending litigation. Every bogus complaint against us was investigated. A double standard proving who controls the system.

298.    Despite admitting they never talk to Durrani, the defense law firms represent him through trial and make all the decision without him. This is an ethical conflict Ohio does nothing about. If we did this, the case would have been dismissed.

299.     Warren Buffett owns Medical Protective. He donated $4 billion in charity in 2023. He blocks Medical Protective from paying the last $40 million to the Durrani victims.

300.     For five years, Medical Protective and their lawyers lied to us about Durrani being available for a deposition. How did we prove it? Durrani's own testimony. He admitted in sworn testimony he always wanted to defend the cases. This is the basis of the fraud lawsuit Judge Barrett is refusing to move forward. When asked if he received requests for depositions, his lawyers told him not to answer to protect their fraud. Judge Schweikert never made him answer.

301.     Dinsmore and Cincinnati Children's threatened inside whistleblowers with HIPAA violations. It does not apply to whistleblowers. A brave orthopaedic surgeon at Children's did speak out. Children's disciplined him.

302.     Despite kicking Durrani out of Cincinnati Children's Hospital, no one from West Chester contacted Children's to check why he left and no one from Children's told West Chester.

303.     None of the hospitals ever reported Durrani issues as required to the National Practitioner Data Bank.

304.     Durrani's lawyers have refused to inform Durrani of our offer for him to assign his bad faith claim against Medical Protective to us. In a great irony, Durrani's insurance company has not protected him from hundreds of millions of dollars in damages not covered by the policies.

305.    Dinsmore lawyer, David Brittingham, suborned perjury. This means he coached

perjury. He did so related to Durrani's administrative assistant. Hamilton County refused

to prosecute him and Ohio did not discipline him.

306.    These large law firms are constantly and intentionally citing cases for law which

the cases do not represent. They lie. They are never punished.

307.    These large law firms just bill, bill, bill and their friends who run their so-called

non-profit hospitals pay them all they want. Medical Protective does the same with

Durrani's lawyers.

308.    There is a bogus legal principle that even though an insurance company (Medical

Protective) pays for their insured's (Durrani) lawyer, the lawyer represents Durrani not

the insurance company. It is the greatest legal fiction ever. Who would believe you would

be more loyal to your "client" than the company who "pays you."

309.    The local and regional media have ignored this story based upon hospital

advertising dollars. This includes all four of Cincinnati's television news stations, the

daily newspaper in Cincinnati and the largest news radio stations.

310.    In 2023, I offered a $1 million award for Durrani's return to the U.S. I raised it to

$2 million. The media even ignored this.

311.    Not one member of the Cincinnati media has attempted to unseal the verdicts.

This is common practice by the media in all sealed Court order matters.

312.    Not one Cincinnati media outlet covered the book release of "The Butcher of

Pakistan" where over 300 people attend. A record for a local book release.

313.    In the history of Hamilton County, it is believed I am the only person ever banned

from a courtroom and banned from the courthouse. Banned from the courtroom by Judge

Schweikert because he despised my assistance to our team. Banned from the courthouse by Judge Kubicki because I used a metaphor during the George Floyd riots: "Do we have to burn down the courthouse to get our own trials?" The media covered these stories.

314.    The Kentucky Bar Association actually has a rule to try to keep an attorney from retiring. You can't make it up. Only an organization of lawyers would have such an absurd rule. Whatever your profession, imagine if you were told you could not retire? I have not bothered to sue on this. A Court would probably rule it is constitutional.

315.    Despite my only doing what Ohio approved after my retirement, I am constantly and falsely accused of the unauthorized practice of law.

316.    While non-lawyer staff every day in America are allowed to sit at counsel table and assist attorneys, courts do not allow me to do it.

317.    The Kentucky legislature passed a law directed at me to make the second charge of unauthorized practice of law a felony. I have never been criminally charged with this once, much less twice.

318.    The Kentucky Bar Association and Kentucky Supreme Court used the rule I now describe against me. They allow their attorney to object to automatic reinstatement from a suspension and force that lawyer to go through a reinstatement process. They forced me through that in back-to-back years. This rule is like a prosecutor objecting to a prisoner being released after serving their sentence and the prisoner having to convince a judge to let them out. The Sixth Circuit Court of Appeals ruled that law constitutional. I have never been disbarred. There is no basis. But the KBA took a 60-day suspension and has kept me out for 11 years. All this despite my committing no crime, harming no client, committing no fraud, no acts of moral turpitude and doing not one dastardly deed.

319.     The KBA reported me to the IRS criminal division. The IRS investigated me for not paying income on money I borrowed for the cause. It was not income. It was money I borrowed.

320.     Ohio and Kentucky investigated me for lending and giving 200 victims various sums of money over the years for saving the victims from utilities turning off, evictions, foreclosures and other issues. They assert this is an ethical violation. The defense lawyers do not have clients with these problems.

321.     Based upon disciplinary rules, I had to retire my Ohio license to work on the cases based upon reciprocity with Kentucky.

322.     The KBA tried to hold me in contempt for working in a law firm where I was suspended. It was not true. It was a new Ohio law firm. The KBA adopted the same rule as Ohio because of me. Despite it not applying, they charged me with contempt. The Kentucky Supreme Court got it all wrong and after I "educated" them they have left me alone.

323.     My forced retirement cheated the victims out of my skills at trial. I am grateful Alan Statman agreed to try the cases and keeps winning. All the Durrani lawyers, despite rules prohibiting it, did all they can with Kentucky and Ohio to "take me out." They hate I survived and thrive.

324.     Not one of the lawyers and judges who hate me have never, could never and would never do what I have done for these victims. Yet, they judge me. They defame me. They belittle me. They marginalize me. I know the truth of what I am about and what they are about.

325. There is only one rational explanation of all this: CORRUPTION. There is not one single rational American when reviewing these facts would not come to that conclusion. Yet, the media ignores it all. Why, because the corruption extends to them. The day is coming when the world will know about all of this. It is the most incredible jaw dropping story in medical/legal history in America.

326. There must be a federal public integrity investigation of all of this.

327. As I made the following list, it only reinforced my conclusions. I am an optimist. I am a pragmatist. I am also a realist.

328. More than ever, I am focusing on calling it the way it is. When 2+2=4, one can stand on the equation. What is our 2+2=4? The victims of Durrani are treated like lepers in Ben Hur while Durrani, his insurance company Medical Protective, and their law firm Dinsmore are coddled, protected and favored the Court system. That is the 2+2. The 4? The Ohio Supreme Court, once led by Maureen O'Connor and now Sharon Kennedy and Judge Michael Barrett of the U.S. Southern District Court are owned by the healthcare industry and their lawyers.

329. I want to add Judge Guy Reece is doing the best he can handling all the trials. May God bless him. He has given us small group trials.

330. The largest law firms in Cincinnati control the Ohio Supreme Court and the Court of Appeals. The same law firms we defeat at trials. The law firms control everything but the juries, the people. Dinsmore, Lindhorst & Dreidame; Taft; Frost Brown Todd; Rendigs and others only care about country club memberships, money and status.

331.    There can be no other explanation. None. It is not that these judges are simply "doing their jobs." Thank God Almighty I am a retired lawyer. I am free of the chains and am armed with the First Amendment to speak the truth. I shall tell the truth.

332.    The Judges co-conspirators cover the breadth of our region and include the following who have the power to do something to alter the course and help but they are complicit and co-conspirators:

  a.  The Media

  b.  Our Fortune 500 Companies

  c.  The Hospitals

  d.  The Ohio Bar Association

  e.  Governor Dewine and AG Dewine when he served in that position.

  f.  AG Yost

  g.  The Ohio Legislature

  h.  Ohio Board of Claims

  i.  The U.S. Attorney

  j.  AG Garland

  k.  AG Barr

  l.  Ohio Senators and Congressman

333.    All know what happened. I have sent letters and emails. I have made calls.

334.    All could or could have done something. Not one has. Not one will. They are all bought and paid for. They are all cowards. They will be where Dante claimed them to go. And every May 1, they celebrate Law Day. It disgusts me.

335.    A freelance reporter for the New York Times named Danny Salino was working on a story, but I have not seen it. Our enemies probably killed it.

336.    Judge Barrett holds Court at the Potter Stewart Courthouse. The irony. Potter Stewart is the U.S. Supreme Court Justice who once lived in Cincinnati. Where did he practice law? Dinsmore. What is he famous for? The line relative to pornography. "I don't know how to define it but I know it when I see it."

337.    Well, I know injustice and corruption when I see it. I believe it is time to publicly fight back. It has reached the point where, in my opinion, we have nothing to lose.

338.    I can't make threats. I haven't. I can't say "you better do "XYZ," or I'll do "ABC." I haven't. I simply either must act or not act.

339.    Why should we not conclude Judge Barrett is never going to do what he should under the facts, law and justice? I conclude he is not. Therefore, I think am going to go another route. I owe it to the victims.

340.    I once personally liked and respected Judge Barrett. When I practiced law before my retirement I use to state to everyone, he possessed good judicial temperament and good personal humanity.

341.    He and his staff always treated me with kindness. Of course, Judge Barrett's reputation is he treats everyone well; doesn't want to upset anyone and moves slow. I am tired of his "slow." His "slow" only hurts the victims and helps Durrani. He knows this. What he is doing flies in the face of all his past. He was known to care. Why could this change?

342.    The pending motions not ruled on is our Motion to Consolidate all three cases in which all the Durrani victims are a party; Motion to Reconsider on emails and the Motion

on what is called Res Judicata and Collateral Estoppel which has been fully briefed and submitted. These are arguments that a case and issue have already been decided. There is also Motion to Amend to add a spoilation of evidence claim which we only learned about during discovery last year. A Medical Protective official admitted to deleting relevant emails.

343.     We have to draw the conclusion Judge Barrett wants to punish us into submission. It is beyond wrong and messed up. He accommodates every Dinsmore request in the fraud case. I have misread and misjudged Judge Barrett. I am the one who always told our team he will be fair. He is not who I thought he was. Facts are facts.

344.     None of his actions described here reflect he's going to do what is right. He would have already.

345.     Medical Protective claims lack of cooperation by Durrani to avoid paying. When that fell apart with Durrani's deposition testimony in 2018, they concocted a recission of this policy defense. Yet, they dropped that claim in 2014 after they brought it. A great irony is res judicata and collateral estoppel applies to that claim.

346.     Then they attempt the res judicata and collateral estoppel knowing there is not ONE "related" lawsuit with the claims of fraud in lack of cooperation and civil conspiracy in that claim in the fraud case based upon the timing of the information. We have detailed this to Judge Barrett. In addition, spoilation of evidence arose in 2023 in William Crawford's deposition.

347.     This was a false accusation every client signed an agreement one for all and all for one.

348.     Next, they tried the joint agreement privity argument. We have defeated that with affidavits and in over 500 camera email reviews. Judge Barrett knows there is no agreement that all the victims would share and share alike and told that to Dinsmore, Medical Protective's law firm.

349.     On February 6, 2024, on the record Dinsmore actually claimed: "we don't think these relationships are set up properly to allow input in decision making from Plaintiffs."

350.     The victims have received updates and given feedback by email an average of once a week for 13 years. Does any lawyer do that with a case? Does anyone have someone who will call, text and email you back right away? Durani victims have had that for 13 years.

351.     The implication is that our team who has fought for now thirteen years for the victims, including financing the battle, are the problem in settling when there has never been one single offer on a case and not one global written offer. Not one verbal global offer is a serious one. Judge Barrett's delays play straight into the hands of Medical Protective. It is shocking.

352.     We have been cheated out of Medical Protective's relevant email communications with heavy redaction.

353.     In thirteen years, nothing matters to Medical Protective in their cruelty and Judge Barrett is now complicit.

354.     This is not about facts and law being against us. This is about shameful cruel delay.

355.     From the beginning, the Durrani litigation should have been resolved and the Court system collapsing upon Durrani and the hospitals. But it has been just the opposite.

The entire system has coddled Durrani, the hospitals and Medical Protective and worked in a biased manner against us. It is truly mind boggling.

356.    In 2015, our clients would have taken $20 million to focus on West Chester. Medical Protective refused.

357.    We told Judge Barrett two years ago; we would take $30 million to the victims if he could get it. Medical Protective never moved. He even said $30 million is fair. Rather than take that out on them, he continues to take it out on us. It's sick. We only went through that exercise to prove to him they are the problem. We had no intention of recommending $30 million. We wanted to make a point about Medical Protective. It doesn't seem to bother him, they never moved.

358.    Judge Barrett also now treats me like I have leprosy. Non-lawyers attend mediations all the time. He does not want me at any mediation or conference. I met with him many times with Matt Hammer, my dad, Alan Statman and Joe Deters.

359.    I want to stress we have a $40 million pot remaining from Medical Protective. That is not going to go away.

360.    When I think for thirteen years, Medical Protective paid lawyers probably $40 million and did not pay the victims $40 million, only $100,000 per person average, I have justifiable anger.

361.    What follows is the chronology of case filings to show the context of the Defendants conduct.

**INDIVIDUAL CASES**
Butler County
Hamilton County/Southern District Of Ohio
2010-2023

All the 500 plus lawsuits against Durrani, CAST and the hospitals were filed between 2010 to 2023 time frame. Most were filed in 2013 and 2014. **Medical Protective is not a party to any of the cases.** Medical Protective never moved to intervene in any of the 400 lawsuits relative to their coverage despite full knowledge of their existence and being fully aware of Judge Black's decision decertifying the class action and holding that each case on coverage must be addressed on a case by case basis. Only the juries hearing the cases can make the Judge Black decision, "Did Durrani's failure to testify and cooperate cause prejudice and/cooperating make a difference?" Settlements were obtained against Cincinnati Children's Hospital, West Chester Hospital, Deaconess Hospital and Journey Lite. These lawsuits were not "unnecessary, costly duplicative, forum shopping and vexatious." This is the often repeated "catch phrase" Medical Protective levies against the plaintiffs

### QUI TAM AGAINST WEST CHESTER
#### 1:13CV194
#### Southern District of Ohio

In 2013, a false claims case was filed against West Chester Hospital which resulted in clients with West Chester Hospital surgeries by Durrani receiving $1,516.56 each. It was filed in an effort to compensate the victims of Durrani at West Chester Hospital. **Medical Protective was not a defendant.** The U.S. government prosecuted the case to a successful conclusion. There was no "unnecessary, costly duplication, forum shopping, and vexation."

### PUREGEN ALPHATEC
### PARCEL LABS
#### 1:13-CV-714
#### Southern District Ohio

In 2013, we filed a lawsuit against Alphatec and Parcel Labs for PureGen being used on a select group of Durrani victims. There was no settlement. Plaintiffs lost based upon congressional granted immunity. **Medical Protective was not a Defendant.** It was filed in an effort to compensate the victims for the use of PureGen. This was the first of many so called "group" filings only because the plaintiffs have the same claim and it avoids filing costs. There was no "unnecessary, costly duplication, forum shopping, and vexation."

### GROUP FILINGS TO SAVE FILING FEES

In 2015, the plaintiffs dismissed hundreds of lawsuits in Butler County and refiled them in Hamilton County.

The complaint was filed with multiple plaintiffs in one lawsuit to save over $100,000 in filing fees.

Some of the Butler County cases were refiled in federal court. All the cases with large group Plaintiffs, including those against Medical Protective, were only filed in groups to save filings fees. It was never done for some inappropriate privity coordinated purpose.

74

Plaintiffs should not be penalized for a cost saving measure in litigation against the largest insurer of doctors in the world.

## MEDICAL PROTECTIVE v. DURRANI, ET AL
### 1:14-CV-005
### Southern District Ohio

In 2014, Medical Protective filed a declaratory judgment action in an attempt to void coverage based upon lack of cooperation and recission. Medical Protective immediately dropped the recission claim. Judge Black certified it as a class action and then decertified the class action. Judge Black ruled coverage must be decided on a case by case basis and lack of cooperation is not enough. Any lack of cooperation must have made a prejudicial difference in the outcome of each trial.

## CONSENT ORDER
### 1:14-CV-00005
### Southern District Ohio
### September 23, 2015

On September 23, 2015, Medical Protective obtained an Order in their Declaratory Judgment action giving it complete control over the course of the litigation from Durrani's standpoint.

## AARON v. MEDICAL PROTECTIVE, ET AL
### 1:15-CV-00691
### Southern District Ohio

In 2015, the plaintiffs filed a lawsuit for **fraud pertaining to Durrani's flight**. Medical Protective was a Defendant. Plaintiff victims themselves moved to dismiss it based upon lack of subject matter jurisdiction (Doc #44), and it was granted. A dismissal for lack of subject matter jurisdiction is not "on the merits" for purposes of claims preclusion. Despite the Order stating with prejudice, for the claim preclusion, it is not on the merits.

Dismissal for lack of subject matter jurisdiction is not "dismissal on the merits," for purposes of claim preclusion, but dismissal for failure to state a claim is a dismissal on the merits. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A. *Wilkins v. Jakeway*, 183 F.3d 528 (6th Cir. 1999).

Claim preclusion only arises in the presence of the following four elements, *Mitchell v. Chapman*, 343 F. 3rd 811 (2003):

1. Where the prior decision was a final decision on the merits. (The cases Medical Protective wants to claim "claim preclusion" were not final decisions on the merits. Lack of subject matter jurisdiction means the Court had no power to decide anything.)

75

2. Where the present action is between the same parties or their privies as those in the prior action. (As this Brief will prove there are NO privies in the lawsuits filed).

3. Where claim in present action should have been litigation in prior action. (We address this as well.)

4. Where identity exists between prior and present actions. (Also addressed)

*Aaron* is the first filing against Medical Protective so it begins here. Also, in context of claim preclusion, "privity" means successor in interest to a party, one who controlled an earlier action, or one whose interests were adequately represented. *Mitchell*, supra. Under this standard, as will be shown, there is no claim preclusion privity. *Mitchell*, supra, even set forth another exception to claim preclusion "rule of differing capacities."

The purpose of this lawsuit was an effort to obtain recovery for Medical Protective's conduct. There was no "unnecessary, costly duplication, forum shopping, and vexation."

## PURPOSE OF CLAIM PRECLUSION

Not only does applying the elements of claim preclusion support Plaintiffs' contentions, these cases which were filed and dismissed were never "litigated" with no discovery and certainly not decided on the merits. Medical Protective's actions is what has cost the plaintiffs time and money, not Plaintiffs' actions.

## REMOVAL AND REMAND

On December 15, 2015, Judge Robert Ruehlman of the Hamilton County Common Pleas set all the cases which he consolidated in five group trials which would have ended the Durrani litigation in 2017.

Only then did Medical Protective paid lawyers join in a baseless removal of all the cases to U.S. District Court, Southern District of Ohio based upon "mass litigation."

On February 13, 2016, Judge Black remanded the cases back to Judge Ruehlman. Based upon the Defendants appeal to the Sixth Circuit, It would be a year before the cases would be sent back on a remand Order which resulted in another year lost.

This conduct by Medical Protective **WAS** "unnecessary, costly duplicative, forum shopping and vexatious."

## ATKINSON, ET AL v. MEDICAL PROTECTIVE
### 1:17-CV-00844
### Southern District Ohio

In 2017, this lawsuit was filed against Medical Protective, Durrani, CAST, Lyon and Lindhorst for fraud and conspiracy to commit fraud by forty (40) new Plaintiffs from *Aaron* above.

**It was based upon Durrani's flight.** Plaintiffs filed a Motion to Dismiss based upon lack of subject matter jurisdiction. It was dismissed August 23, 2018. The Plaintiffs in 1:15-CV-00691 *Aaron* were NOT Plaintiffs in 1:17-CV-0844 and vice versa. *Aaron* and *Atkinson* did not involve a double dismissal of the same Plaintiffs. This case involved additional clients. There was no "unnecessary, costly duplication, forum shopping, and vexation."

As in *Aaron* 1:15-CV-00691, dismissal for lack of subject matter jurisdiction is not "dismissal on the merits" for purpose of claim preclusion.

## FLIGHT ISSUE

Based upon the chronology of cases and the lack of subject matter jurisdiction outcomes in *Aaron* 1:15-cv-00691 and *Atkinson* 1:17-CV-00844, the flight issue should not be excluded from any Plaintiff, and at least the 38 Plaintiffs, not included in *Aaron* and *Atkinson* who came to the law firm later in time and could not be included in *Aaron* or *Atkinson*. There are 38 victims not a Plaintiff in these two cases. These plaintiffs are listed later.

Dismissal for lack of subject matter jurisdiction is not "dismissal on the merits," for purposes of claim preclusion, but dismissal for failure to state a claim is a dismissal on the merits. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A. *Wilkins v. Jakeway*, 183 F.3d 528 (6th Cir. 1999).

## BMP-2 MEDTRONIC
### 1:17-CV-187
### Southern District

Plaintiffs filed a lawsuit against Medtronic for BMP-2 being used improperly. **It had nothing to do with Medical Protective.** It was settled with each Plaintiff receiving $1229.84. Unlike Alphatec, Medtronics offered a settlement despite congressional granted immunity. The purpose of the lawsuit was to obtain money for the plaintiffs harmed by BMP-2. There was no "unnecessary, costly duplication, forum shopping, and vexation."

## AARON v. MCCARTNEY
### 1:18-CV-00173
### Southern District Ohio

This lawsuit was filed on March 9, 2018, against lawyers and law firms representing Durrani and CAST **for fraud and conspiracy to commit fraud. Medical Protective was not a Defendant.** Durrani's two group depositions in the individual client cases were on February 24, 2018, and March 10, 2018. Plaintiffs must not be penalized for not naming Medical Protective in this case filed one day BEFORE the second Durrani deposition. Res judicata, claim preclusion and privity should not attach from this filing the day before the March 10, 2018, deposition. Not until these two Durrani depositions were completed did we have confirmation of the deposition fraud exist. There was no "unnecessary, costly duplication, forum shopping, and vexation."

On August 21, 2018, a Motion to Dismiss without prejudice was filed for lack of subject matter jurisdiction (Doc #25) with a tendered Order as such after Mike Lyon claimed it was an impediment to settlement.

Mike Lyon told this Court it needed to be with prejudice and this Court in the strongest terms told Plaintiffs' counsel to dismiss it with prejudice to further settlement proceedings.

On August 23, 2018, a Motion to Dismiss with prejudice (Doc #26). Judge Black dismissed it with prejudice on August 23, 2018.

This case dismissal is what led to *Albers* A1903421 below.

However, just like in *Aaron* 1:15-CV-00691 and *Atkinson* 1:17-CV-00844, it was dismissed based upon subject matter jurisdiction.

This case had nothing to do with what was learned at the two Durrani depositions the day after it was filed.

## ALBERS v. MEDICAL PROTECTIVE
### 2:19-CV-00088
### Eastern District Kentucky

This case was filed on July 8, 2019, in Eastern District of Kentucky. Medical Protective was a Defendant along with law firms. **The basis of this lawsuit was lack of settlement.** It included Kentucky's Unfair Claims Practices. *Albers* 2:19-cv-88 was dismissed without prejudice after a voluntary dismissal filing. (#51, #52) Eastern District of Kentucky. There was no "unnecessary, costly duplication, forum shopping, and vexation."

## ALBERS v. LYON
### A1903421
### Hamilton County

This lawsuit was filed based upon Mike Lyon's fraud upon the plaintiffs in the dismissal of the *Aaron* federal case 1:18-CV-00173 with Mike Lyon's false promise to drive to Ft. Wayne and make an effort to settle the cases. Lyon claimed *Aaron* 1:18-CV-00173 federal suit was the impediment to settlement. He lied. **Medical Protective was not a Defendant.**

**The case was about Mike Lyon lying and his fraud.** This case is detailed further later in this Brief. At the July 19, 2024, hearing, and the Court will see in his briefs and his powerpoints, Rick Porotsky deceptively used this case dismissal. It's all false. There was **NO** legal basis to bring fraud in the lack of cooperation against Medical Protective in the lawsuit against Mike Lyon lying to us. As the Court will realize in an upcoming section of this brief, Judge Hall ruled there was no privity. Our fraud claim against Medical Protective had no place in the "Mike Lyon the Fraud" case. There was no "unnecessary, costly duplication, forum shopping, and vexation." This case is on appeal.

**PREJUDGMENT INTEREST**
**HEARING PATRICIA ADAMS**
**(JUDGE CRAWFORD)**
**AUGUST 6, 2019**

This hearing is important. At this hearing Mike Lyon confirmed and stipulated on the record Mackenzie Walters told Judge Crawford that under no circumstances would Medical Protective ever pay on any of the plaintiffs' claims.

For six years, Medical Protective gave Plaintiffs false hope that trial results mattered when in actuality nothing mattered to it. Every single settlement talk or mediation up until then and since has only been psychological fraud on Plaintiffs.

It was this information coupled with Durrani's deposition testimony which led to the filing of the present *Adams* case.

**ADAMS v. MEDICAL PROTECTIVE**
**1:20-CV-170**
**Southern District Ohio**

This is the pending case. It was filed based upon the realization that nothing mattered to Medical Protective and for fraud in the lack of cooperation in the Durrani trial deposition issue in cases for which verdicts were obtained at the time of the filing.

The theory at the time was if a plaintiff has a verdict, Medical Protective could not claim the case was defensible. It was later concluded this did not matter to it.

The pending case is fraud, conspiracy to commit fraud and spoilation of evidence still remaining. The purpose is to further compensate victims for Medical Protective acts. **From this point on, it was not possible to bring fraud in the lack of cooperation for these 21 Plaintiffs because those claims were already filed in *Adams*. No prior case should prohibit its filing and no case since its filing should cause dismissal of these claims. There is no basis to dismiss these 21 initial claims.** There was no "unnecessary, costly duplication, forum shopping, and vexation."

**In its September 29, 2022, decision in this *Adams* case, the Court stated *Aaron* 1:15-CV-00691 Plaintiffs were the same as the present *Adams* case. However, that was before the Walters statement and Durrani depositions. The Court should not apply *Aaron* to *Adams*.**

In addition, the detail is provided herein under *Aaron* 1:18-CV-00173 how that does not apply and should not preclude the litigation.

**SETTERS v. MEDICAL PROTECTIVE**
**1:21-CV-422**
**Southern District**

79

This is a supplemental proceeding under the Ohio Revised Code to collect the *Setters* verdict. This Claim under ORC 3929.06 is **NOT** the same as our independent claims brought against Medical Protective. There was no "unnecessary, costly duplication, forum shopping, and vexation."

## MEDICAL PROTECTIVE v. HOUNCHELL
### 1:22-CV-00122
### Southern District

Medical Protective filed this case only against only Rita Hounchell in an attempt to void coverage. Judge Black stayed it pending the *Adams* 1:20-CV-170 outcome which could render this case moot. Gamesmanship? They only filed against one of the plaintiffs. As in all their actions, it wants to slow roll the plaintiffs to death.

Based upon ALL the arguments Medical Protective has made in this matter, ALL of the plaintiffs except Rita Hounchell, can not be subject to the same or similar litigation.

In the prayer for relief in their Complaint they state: Declaratory judgment that: (a) Medical Protective has no coverage or payment obligations under the Durrani Policies or CAST Policies for any damages owed in the Underlying Lawsuit; and (b) this declaration is equally applicable to the Underlying Plaintiffs, precluding their claims against Medical Protective for coverage or payment relating to any damages owed in the Underlying Lawsuit.

## ATWOOD v. MEDICAL PROTECTIVE
### 2:22-CV-127
### Eastern District Kentucky

The case was filed for twenty-two Kentucky resident plaintiffs who won their Hamilton County trials. Medical Protective was a party, but this was only for the claims this Court dismissed on September 29, 2022, in *Adams* and stating in a hearing transcript any claim under a Kentucky statute should be in Kentucky. The claims filed were under the **Kentucky Unfair Claims Practices** Act, fraud in reliance, concealment, constructive and public policy and civil conspiracy. There were no claims filed for the three pending and remaining *Adams* cases. How could the plaintiffs file the same claims after they were filed in *Adams*? It did not happen. For lack of a better phrase, since only Kentucky could hear the statute application, it was a necessary claim splitting. The case was voluntarily dismissed the case without prejudice. There was no decision on the merits. There was no "unnecessary, costly duplication, forum shopping, and vexation."

## DENSLER v. MEDICAL PROTECTIVE
### 1:23-CV-00216
### Southern District Ohio

This lawsuit was filed based upon the same claims in *Adams* for which verdicts were obtained in Hamilton County since the initial *Adams* filing. The Court has now consolidated this case with *Adams* above based upon statements from the July 19 hearing. There was no "unnecessary, costly duplication, forum shopping, and vexation." It was merely adding Plaintiffs.

## SPOLIATION OF EVIDENCE

Based upon the discovery in 2023 and 2024, for the first time **ALL** Plaintiffs had a spoliation of evidence claim and it was filed. It is filed for **ALL** Plaintiffs based upon consolidation and the Third Amended Complaint. This claim, for all Plaintiffs, can not be subject to claim preclusion based upon its acrual date.

Spoliation is the intentional destruction, mutilation, alteration, or concealment of evidence. *Black's Law Dictionary* 1409 (7th Ed.1999). Civ.R. 37 provides trial courts with broad discretion to impose sanctions upon a party who violates the rules governing the discovery process. *See Toney v. Berkemer*, 6 Ohio St.3d 455, 458 (1983). This may include drawing an inference unfavorable to a party that spoliates evidence. *Wheatley v. Marietta College*, 4th Dist. No. 14CA18, 2016-Ohio-949, ¶ 127. "Sanctions and causes of action for spoliation of evidence are designed to place responsibility and accountability on parties who were actually in possession of evidence that existed at one time but who later failed to provide the evidence without adequate explanation." *Cincinnati v. Triton Servs.*, 1st Dist. No. C-170705, 2019-Ohio-3108, ¶ 41.

{¶ 13} A party seeking a negative evidentiary inference due to spoliation must establish that (1) the evidence is relevant, (2) the offending party had an opportunity to examine the unaltered evidence, and (3) even though the offending party was put on notice of impending litigation, the evidence was intentionally or negligently destroyed or altered without providing an opportunity for inspection by the proponent. *Wentling v. David Motor Coach Ltd.*, 5th Dist. No. 2017CA00190, 2018-Ohio-1618, ¶ 37.

## ERIC DETERS v. DINSMORE & OHIO DISCPLINARY COUNSEL
### 1:23-CV-233
### Southern District Ohio

This is Eric Deters' lawsuit against Dinsmore and Ohio Disciplinary Counsel for tortious interference against Eric Deters contract with Drake Law. **Medical Protective is not a party**. This Court has stayed this case. Dinsmore is attempting to use a lawsuit against it by Eric Deters on the issue of privity and Medical Protective. Under the law, there is no privity. Judge Hall in *Albers* A1903421 confirms it. There was no "unnecessary, costly duplication, forum shopping, and vexation."

## ALTER EGO ISSUE
### June 2023

In a couple individual cases, *Hastings* A1505972 and *Huser* A1706432, as trials approached, these plaintiffs moved to amend to add Medical Protective as the alter ego of Durrani in their two cases. This action was taken based upon Judge Reese's comments during trials. He expressed concerns that Medical Protective and Durrani were one in the same. The Court ultimately overruled the motions. There was no "unnecessary, costly duplication, forum shopping and vexation." It has no bearing on the issues before this Court as claimed by Medical

Protective. These were individual medical malpractice cases. Medical Protective argues the Court's not allowing the Amendment should add to the privity issue. It does not.

## COURT OF CLAIMS
### 2023-00728 JD
### Ohio

All of the Durrani victims filed this lawsuit against State of Ohio for failure to provide trials in three years under Ohio's Rules For Superintendance. **Medical Protective is not a party.** The matter is now pending in the 10th District Court of Appeals. The purpose is to hold Ohio accountable for not following their own trial completion rules. There was no "unnecessary, costly duplication, forum shopping, and vexation."

## AARON v. MEDICAL PROTECTIVE
### 1:23-CV-0261

This lawsuit is all remaining plaintiffs, whether they obtained a verdict in Hamilton County or not. It involves the same three claims as filed in *Adams* and *Densler*. Again, it was filed based upon the conclusion all plaintiffs had a claim whether or not they had a trial yet. The Court has now consolidated it with *Adams* too. All Medical Protective Plaintiffs are now in *Adams*. There was no "unnecessary, costly duplication, forum shopping, and vexation." It was merely adding Plaintiffs with the same claims.

## BRADY v. MEDICAL PROTECTIVE
### A2302807
### Hamilton County

This is a declaratory judgment action on the issue of cooperation. Judge Reece ruled it was not ripe. We disagree, but he made no rulings on the merits. It was an attempt to conclude the cooperation issue for once and for all. There was no "unnecessary, costly duplication, forum shopping, and vexation."

## MEDICAL PROTECTIVE v. DURRANI, ET AL
### A2304696
### (Recission)
### Hamilton County

Medical Protective filed the recission claim based upon Durrani's alleged lies on his insurance application even though Medical Protective filed it and withdrew recission eight (8) years earlier. This is the same claim it dropped in 2015 and now refiled. The scheduling Order provides a short time frame and the matter will most likely be decided in a summary fashion. The plaintiffs are confident they will win based upon laches, res judicata and claim preclusion. The irony. This filing by Medical Protective **IS** "unnecessary, costly duplication, forum shopping and vexation." Judge Reece ruled against them.

## LANG v. CHILDREN'S

A2402028
Hamilton County

This is a declaratory judgment action we filed on the issue of Children's Hospital's liability for Durrani based upon his employment contract. **Medical Protective is not a Defendant** nor has any involvement with Children's cases as it was not an insurer. It is on appeal. There was no "unnecessary, costly duplication, forum shopping, and vexation." We dropped this to pursue the matter with individual cases.

### ADAMS v. MEDICAL PROTECTIVE
1:24-CV-00207
Southern District Ohio

This is a Supplemental Proceeding on the *Adams* Hamilton Court verdict. This claim under ORC 3926.06 is **NOT** the same as our independent claims brought against Medical Protective. There was no "unnecessary, costly duplication, forum shopping, and vexation."

### MCCANN v. MEDICAL PROTECTIVE
1:24-cv-00208
Southern District

This is a Supplemental Proceeding related to the *McCann* Hamilton Court verdict. This claim under ORC 3926.06 is **NOT** the same as our independent claims brought against Medical Protective. There was no "unnecessary, costly duplication, forum shopping, and vexation."

### HOUNCHELL, ET AL v. DINSMORE
A2402433
Hamilton County

This claim is for all the plaintiffs against Dinsmore for tortious interference with their individual contracts with Drake Law. **Medical Protective is not a party.** The purpose is to fight back against Dinsmore's abuse. Dinsmore attempts to use this against plaintiffs on the issue of privity. Under the law, there is no privity. Again, Judge Hall in *Albers* A1903421 confirms it. There was no "unnecessary, costly duplication, forum shopping, and vexation." Phil Cameron, the attorney, dropped it.

### PIERCE, ET AL v. LINDHORST, ET AL
A2403042
Hamilton County

This was filed for plaintiffs who have won their trials with Durrani against the law firms that claim to be representing Durrani for not communicating with Durrani. **Medical Protective is not a party.** The purpose is to hold the law firms responsible for their conduct which appears to violate Ohio ethical rules on client communication. This does not amount to privity for the same reasons as *Albers* A1903421. There was no "unnecessary, costly duplication, forum shopping, and vexation." Phil Cameron dropped it.

83

## ERIC DETERS v. RICK POROTSKY
1:25-cv-386
Southern District of Ohio

I have sued Rick Porotsky for defamation claims I am engaged in the unauthorized practice of law.

## ERIC DETERS v. WARREN BUFFETT
Kenton Circuit

I have sued Warren Buffett for defamation and tortuous interference of a contract based upon a statement made by his executive assistant.

## SECTIONS OF JUDGE BARRETT'S SEPTEMBER 29, 2022, OPINION AND ORDER PLAINTIFFS WANT TO EMPHASIZE

"There were two other related cases filed in this Court. This first was *Atkinson v. The Medical Protective Company*, Case No. 1:17-cv-00844 (S.D. Ohio), which was filed on December 15, 2017. However, *Atkinson* was not brought by any of the same plaintiffs in this matter: Paul Marksberry, Crystal Pierce, Michael Sander, David Shempert or Richard Stanfield. The claims in *Aaron v. McCartney* were not brought against MedPro, Robert Ignasiak, or Timothy Kenesey."

"Turning to the claim preclusion analysis, the Court notes that the claims in *Aaron v. The Medical Protective Company* were dismissed with prejudice on August 24, 2018. Case No. 1:15-cv-00691 (Doc. 46). Therefore, there has been a final judgment on the merits in the prior action."

"As to the second element of claim preclusion, the parties in the *Aaron* case and this case are the same parties."

**This is not true as the chronology proves.**

The following Plaintiffs in *Adams* were not named in *Aaron* because they came to the litigation later in time:

1. Sharon Howard
2. James Albers
3. Thomas Atkinson
4. Paul Baker

5. Niethsa Barron-Myles, Adm for Estate of Harry Reynolds
6. Jody Bauer
7. Latoya Bradshaw
8. Calvin Brown
9. Renecia Cherry
10. Jena Clark
11. Terry Collins
12. Lisa Conley
13. Janet Cornett
14. Krista Cox
15. Amber Croxson
16. Amanda Dradt
17. Chris Ebbing
18. Margie Eversole
19. Mark Fitzpatrick
20. Sara Godby
21. Jessica Hastings
22. Alyssa Jackson
23. Thomas Kellison
24. Michelle Keplinger
25. Vivian Kiefer
26. Marsha Martin
27. Traci Mathews
28. Alan Matthews
29. Whitney McKenzie
30. Kerry McNeal
31. Bryan Powers
32. Raymond Roberts
33. Paul Scholz
34. Carolyn Siermering, Administrator of Estate of Barbara Couch
35. Shandon Simmons
36. Darlene Sterling
37. Deborah Sturdivant
38. Ashisha Wallace, Administratrix of Estate of Clara Tubbs-Hill

The Court claimed there were not sufficiently alleged facts which support a claim of intentional infliction of emotional distress. Not only should plaintiffs be allowed to solve that in the Third Amended Complaint and certainly can as to *Densler* and *Aaron* being consolidated.

## CONCLUSION ON CHRONOLOGY

As stated at the outset, this chronology reflects every possible effort to pursue every possible recovery for each of the plaintiffs. Medical Protective mischaracterizes all of it and leaves out the facts the plaintiffs have stated herein. Context matters. Medical Protective must not benefit

from its conduct. But for its conduct, there would not have been the need for all these filings. Medical Protective has chosen a scorched earth defense while complaining of Plaintiffs comprehensive response to its actions. It is laughable for Medical Protective to accuse plaintiffs of increasing the cost of this litigation given its behavior.

On the law involving new facts or a worsening of the earlier facts, victims pled significant new facts as Medical Protective continues their ongoing perpetuation of fraud. The following was pled in *Adams*:

1. Fraudulent form letters to Durrani which plaintiffs only learned about in discovery in 2023.

2. More trials with refusal to provide Durrani for depositions. This happens at every trial and will in all future trials. It is ongoing. Based upon the history of the deposition issue and Durrani's depositions and his "start/stop" after those, this Court MUST conclude and rule that Plaintiffs are victims of the an ongoing fraud.

3. False pretrial reports prepared by lawyers and sent to Medical Protective plaintiffs only recently learned about.

4. Worthless mediations/negotiations taking place which Plaintiffs relied upon were taking place in good faith through now.

5. Information first discovered from Medical Protective employee depositions taken in 2023 including spoilation of evidence.

6. Information from claim files produced since 2018 to the present.

7. Ongoing Durrani manipulation.

8. Ongoing misrepresentation of coverage.

9. Ongoing misrepresentation of its reserves set for each individual case.

10. Ongoing fraud being perpetrated by Medical Protective hired experts to defend individual cases.

86

11. Ongoing fraud in Medical Protective's characterization of lack of contact directly with Durrani.

12. Ongoing fraud in claiming there exists a "wall" with legal counsel Medical Protective hired for Durrani when there is no "wall" in claimed tri-partite circumstances. In fact, Medical Protective and their hired lawyers for Durrani are the ones in a coordinated conspiracy.

13. Rick Porotsky even wants to play "disciplinary" counsel again on our agreements. The conspiracy I allege in my lawsuit against Dinsmore and Ohio is real. It should not be stayed as to me and Dinsmore.

## CONTINUED ATTACKS UPON ME

363.  I have not attended a trial since 2018.

364. I have not attended a court hearing in Hamilton County since 2018.

365. I have not attended one hearing in federal court since 2018.

366. I rarely do legal research, which I am allowed to do.

367. I rarely draft any pleadings, which I am allowed to do.

368. I have never signed an attorney's name.

369. I have never used or have access to an attorney's email address.

370. Any and all communications, text, email, or verbal to an attorney I make is a suggestion to be taken, ignored or modified.

371. I have been sending out updates with attorney approval to clients since 2013 with full knowledge of ODC with no recrimination or direction to stop.

372. I have been funding the litigation since 2013 with cash and loans. There is no law prohibiting me to finance the litigation.

373.     The Durrani victims signed a new contract with Drake II. They have fully consented to all including the involvement of Eric Deters as a consultant. Imagine this, based upon Judge Schweikert's prior attacks, this makes twice ALL Durrani clients signed new contracts.

374.     Drake II leases their office from my Trust.

375.     I decided to be a consultant and not an employee to Drake II in another effort to stop the harassment.

376.     The following are the consulting services I am providing to Drake II:

   a)  Facilitation of case management ensuring deadlines are met.

   b)  Financing Drake II cases

   c)  Creation of systems to ensure all work is timely completed.

   d)  Client relations with Drake II clients

   e)  Marketing

   f)  Lawyer referrals

   g)  Victim advocacy

   h)  Trial preparation

   i)  Public relations

   j)  Strategy

377.     Drake II no longer uses the Deters Law name.

378.     The Deters Law sign has come down and Deters Consulting Company and Drake Law sign has gone up.

379.     Deters Law employees are now Drake II employees.

380.     I am not an employee of Drake II.

381.     If I did not finance this litigation, these victims would lose their advocates and experts who have worked their cases for ten years. ALL the Defendants know the critical importance of me to the Durrani victims, thus the conspiracy against me. Who would win? Dinsmore and Medical Protective.

382.     In the deposition of Rita Hounchell in *Adams v. Medical Protective*, Dinsmore attorney, Greg Harrison who represented Medical Protective, spent the ENTIRE deposition focused on the issue of Deters Law's relationship with the Durrani clients, including the issue of which the ODC has raised. It was the ONLY deposition that Medical Protective took in *Adams*.

383.     In the history of Hamilton County, it is believed I am the only person ever banned from a courtroom and banned from the courthouse. Banned from the courtroom by Judge Schweikert because he despised my assistance to our team. He detested my speaking with and assisting the attorneys. Banned from the courthouse by Judge Kubicki because I used a metaphor during the George Floyd riots: "Do we have to burn down the courthouse to get our own trials?" The media covered these stories.

384.     The Kentucky Bar Association actually has a rule to try to keep an attorney from retiring. You can't make it up. Only an organization of lawyers would have such an absurd rule. Whatever your profession, imagine if you were told you could not retire? I have not bothered to sue on this. A Court would probably rule it is constitutional. I am retired by declaration.

385.     Despite my only doing what Ohio approved after my retirement, I am constantly and falsely accused of the unauthorized practice of law including by Judge Barrett.

386.     While non-lawyer staff every day in America are allowed to sit at counsel table and assist attorneys, courts do not allow me to do it.

387.     The Kentucky legislature last year passed a law directed at me to make the second charge of unauthorized practice of law a felony. I have never been criminally charged with this once, much less twice.

388.     The Kentucky Bar Association and Kentucky Supreme Court used the rule I now describe against me. They allow Bar Counsel to object to automatic reinstatement from a suspension and force that lawyer to go through a reinstatement process. They forced me through that in back-to-back years. This rule is like a prosecutor objecting to a prisoner being released after serving their sentence and the prisoner having to convince a judge to let them out. The Sixth Circuit Court of Appeals ruled that law constitutional. It is beyond wrong. I have never been disbarred. There is no basis. But the KBA took a 60-day suspension and has kept me out for thirteen years. All this despite my committing no crime, harming no client, committing no fraud, no acts of moral turpitude and doing not one dastardly deed.

389.     The KBA reported me to the IRS criminal division. The IRS investigated me for not paying income on money I borrowed for the cause. It was not income. It was money I borrowed.

390.     Ohio and Kentucky investigated me for lending and giving 200 victims various sums of money over the years for saving the victims from utilities turning off, evictions, foreclosures and other issues. They assert this is an ethical violation. Medical Protective paid lawyers do not have clients with these problems.

90

391.     Based upon disciplinary rules, I had to retire my Ohio license to work on the cases based upon reciprocity with Kentucky.

392.     The KBA tried to hold me in contempt for working in a law firm where I was suspended. It was not true. It was a new Ohio law firm. The KBA adopted the same rule as Ohio because of me. Despite it not applying, they charged me with contempt. The Kentucky Supreme Court got it all wrong and after I "educated" them they have left me alone. They have sat on my request to correct them for three years.

393.     My forced retirement cheated the victims out of my skills at trial. I am grateful Alan Statman agreed to try the cases. All the Durrani lawyers, despite rules prohibiting it, did all they can with Kentucky and Ohio to "take me out." They hate I survived and thrive.

394.     Not one of the lawyers and judges including the Defendants who hate me have never, could never and would never do what I have done for these victims. Yet, they judge me. They defame me. They belittle me. They marginalize me. I know the truth of what I am about and what they are about.

395.     There is only one rational explanation of all this: CORRUPTION. There is not one single rational American when reviewing these facts would not come to that conclusion. Yet, the media ignores it all. Why, because the corruption extends to them. The day is coming when the world will know about all of this. It is the most incredible jaw dropping story in medical/legal history in America.

396.     **What I am doing is a bigger issue to Defendants than what Durrani, the hospitals and Medical Protective have done to these victims. The phrase false moral equivalent comes to mind.**

## MY CLAIMS AGAINST DEFENDANTS

438.     I bring a claim under 18 U.S.C. Section 214 Conspiracy Against Rights

which states as follows:

> *This statute makes it unlawful for two or more persons to conspire to injure,*
> *oppress, threaten or intimidate any person of the state, territory or district in the*
> *free exercise or enjoyment or any right or privilege secured to him/her by the*
> *Constitution or the laws of the United States, (or because of his/her having*
> *exercised the same).*

439.     This is the same law President Trump's DOJ is using against Letitia

James.

440.     The Defendants have violated my constitutional rights.

441.     The Defendants have violated my contract rights and interference with my

core contract rights outside their judicial duties.

442.     The Defendants have defamed me for the unauthorized practice of law

outside their judicial duties.

443.     The Defendants have obstructed Durrani victims' Seventh Amendment

rights.

444.     The Defendants are not fair and impartial.

445.     The Defendants have been involved in criminal conduct which removes

them from immunity.

446.     The Defendants have engaged in bribery, extortion, honest services fraud,

mail and wire fraud and abuse of an office.

447.     My due process rights of "life, liberty and pursuit of happiness" have been

infringed.

448.    My equal protection rights have been violated by being treated different from similarly situated persons and the law applied unequal to me.

449.    Defendants have violated my right to work in my chosen profession.

450.    The Defendants have acted with criminal intent and deliberate indifference.

451.    The failure of the Supreme Court to provide these trials is an administrative act and not subject to any immunity.

452.    Civil conspiracy is a claim that arises when two or more people agree to commit a wrongful act (a tort) that harms another person, and the act is actually carried out, resulting in damages. Essentially, it's a combination of people working together to achieve an unlawful objective, causing injury.

453.    There was an agreement, either explicit or implicit, between the Defendants to commit a wrongful act.

454.    The Defendants took steps to carry out the agreement, furthering the unlawful act.

455.    I suffered actual damages as a result of the Defendants' actions.

456.    The agreement to commit the unlawful act was malicious.

457.    The Fourteenth Amendment states: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Defendants violated my Fourteenth Amendment rights.

458.     Equal Protection refers to the idea that a governmental body may not deny people equal protection of its governing laws. The governing body state must treat an individual in the same manner as others in similar conditions and circumstances. Defendants violated my equal protection rights.

459.     Federal judges generally have immunity for actions taken within their official capacity, but this immunity is not absolute and does not extend to actions outside that scope. However, this Immunity does not cover actions outside the judge's official duties or when they act in clear absence of jurisdiction.

460.     Based upon the facts, Defendants have committed the following crimes:

Section 2921.43: Soliciting or accepting improper compensation

Section 2921.42: Having an unlawful interest in a public contract.

Section 2921.32: Obstructing justice.

Section 2921.31: Obstructing official business.

Section 2921.01: Offenses against justice and public administration general definitions

Section 2921.03: Intimidation

**FIRST CAUSE OF ACTION- CIVIL RIGHTS VIOLATION (42 U.S.C. 1983)**

461.     Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

462.     Plaintiff has constitutional right to due process, equal protection under the law and a right to her health, reputation, wages and benefits.

463.     Plaintiff was deprived-of-clearly-established rights secured-by-the-Constitution and laws of the United States, being without limitation, those rights secured

94

under the Fourth, Sixth and Fourteenth Amendments, by one or more foregoing
Defendants acting under color of state law.

464.      Acting under color of law, one or more of the foregoing Defendants
deprived Plaintiff of the rights, privileges, and immunities secured to her by the United
States Constitution by their intentional actions and/or omissions, and enforced under 42
U.S.C. §1983, including without limitation.

### SECOND CAUSE OF ACTION- DEFAMATION

465.      Plaintiff incorporates by reference and realleges each and every allegation
within this complaint as if set forth herein.

466.      Said Defendants intentionally, knowingly and/or recklessly published or
caused to be published these false statements through the media where such statements
were published, republished, circulated and/or otherwise disseminated in the newspaper;
television; magazines; legal publications; social media, blogs and online publications all
over the world. The damages are irreparable.

467.      All-Defendants' actions were-in reckless disregard of the truth.

468.      Defendants' oral and written statements were a direct and proximate cause
of the injuries, damages and harm suffered by Plaintiff.

469.      Because the above-named Defendants' conduct toward Plaintiff was
improperly motivated and was intentional, willful and wanton, Plaintiff is entitled to
punitive exemplary damages in addition to compensatory damages.

### THIRD CAUSE OF ACTION- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

470.     Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

471.     Defendants, by and through their agents, have wrongfully and negligently caused Plaintiff to suffer severe emotional distress under the stigma of being falsely accused and wrongfully convicted of a crime while holding a judicial office.

472.     Defendants continue to inflict severe emotional distress on Plaintiff through their baseless criminal prosecutions, charges, misrepresentations and other actions, and denial of due process and equal protection under the law, which are ongoing.

473.     As a direct and proximate result of Defendants' actions set forth herein, Plaintiff has suffered and incurred damages.

## FOURTH CAUSE OF ACTION- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

474.     Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

475.     Defendants, by and through their agents, have wrongfully and intentionally caused Plaintiffs to suffer severe emotional distress under the stigma of being falsely accused and wrongfully convicted of a crime while holding a judicial office.

476.     Defendants continue to inflict severe emotional distress on Plaintiffs through their baseless criminal prosecutions, charges, persecution, misrepresentations and other actions, and denial of due process and equal protection of the law, which are ongoing.

477.     As set forth herein, Plaintiff was subjected to a pattern of discrimination and misconduct based, in whole or in part, her race.

96

478. At all relevant times, the above-named Defendants knew or should have known that their allegations against Plaintiff were false.

479. The above-named Defendants' actions towards Plaintiff are evidence of a pattern of race discrimination, which further constitutes extreme and outrageous conduct.

480. The conduct of the above named Defendants was outrageous in character and extreme in degree, and went beyond all possible bounds of decency in a civilized society.

481. The extreme and outrageous conduct by Defendants was done in a willful and wanton manner and constituted a disregard for the rights of Plaintiff.

482. As a direct and proximate result of the above-named Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress.

483. Because-the-Defendants' extreme and outrageous conduct toward Plaintiff was improperly motivated and was intentional and wanton, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages.

## FIFTH CAUSE OF ACTION- MALICIOUS ABUSE OF PROCESS

484. Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

485. Defendants maliciously used a legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.

486. Defendants abused their power when they maliciously and vindictively misused their positions and abused their power to unconstitutionally deprive and defraud Plaintiff of his career, freedom, life, liberty and happiness.

487. At all relevant times, the above-named Defendants intended to and did, in fact, use the process for self-serving and improper reasons and motives, and to otherwise obtain a collateral benefit.

488. As a direct and proximate result of Defendants' actions set forth herein, Plaintiff has suffered harm and incurred damages.

## SIXTH CAUSE OF ACTION- CIVIL CONSPIRACY

489. Defendants have acted in an unlawful civil conspiracy.

## SEVENTH CAUSE OF ACTION- CLAIM UNDER ORC 2307.60

490. As fully described in the facts, the criminal conduct of Defendants provides a claim under these sections.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A. Compensatory damages in an amount to be shown at trial.

B. Punitive Damages in an amount to be shown at trial.

C. Costs incurred in this action and reasonable attorney fees under 42 U.S.C. § 1988;

D. Prejudgment interest; and

E. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

98

Eric E. Deters, Pro Se
5247 Madison Pike
Independence, KY 41051
eric@ericdeters.com
859-250-2527

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d) and other applicable law, I certify that on September 2nd, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record and parties who are deemed to have consented to electronic service.

_____
Eric E. Deters, Pro Se

# EXHIBITS

1. "Butcher of Pakistan"

2. Injustice in America

3. Barrett Complaint

4. David Drake Letter

5. Drake Pro Hac Vice

6. Barrett Letter to Joe Deters

7. Consulting Agreement

8. Judge Hogan

9. Salute to Supreme Court

10. Judge Reece Recission Durrani

11. Legislative History

12. Barrett's Trial Decision