# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ERIC ESQUIRE DETERS, | ) | CASE NO.  1:25-cv-640 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | **CORRECTED MEMORANDUM** |
| | ) | **OPINION AND ORDER\*** |
| | ) | |
| | ) | |
| JUDGE MICHAEL BARRETT, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Plaintiff Eric Esquire Deters ("plaintiff") filed this action *pro se* against several judges and a state legislator for alleged unlawful conduct implicating plaintiff's medical malpractice litigation on behalf of his clients.[1] He names as defendants Judge Michael Barrett of the United States District Court for the Southern District of Ohio; Ohio Supreme Court Chief Justice Sharon Kennedy; Ohio Supreme Court Justice Joseph Deters; former Ohio Supreme Court Chief Justice Maureen O'Connor; and former Ohio State Representative William Seitz. (Doc. No. 1; *see* Doc. No. 25, at 3.)[2] Defendants Chief Justice Kennedy, Justice Deters, former Chief Justice O'Connor,

---

[1] The Court sits in designation of this case, pursuant to an order issued by Chief Judge Jeffrey S. Sutton of the Sixth Circuit Court of Appeals. (Doc. No. 14 (Order of Reassignment).)

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

\*This Corrected Memorandum Opinion and Order is issued for the sole purpose of correcting certain factual inaccuracies relating to the status of plaintiff's law license contained in the Memorandum Opinion and Order issued December 23, 2025. Neither the substance of the Court's legal analysis, nor its ruling that the complaint is dismissed pursuant to Fed. R. Civ. P. 21(b)(1), has been changed.

and former Representative Seitz (the "state defendants") filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 18 (Motion to Dismiss).) Plaintiff opposes the motion (Doc. No. 25 (Response)), and state defendants have filed a reply. (Doc. No. 26 (Reply).)

But the Court need not (and cannot) reach the merits of state defendants' motion because plaintiff's pleading suffers from various threshold deficiencies that preclude consideration on the merits and require dismissal. As detailed below, plaintiff's legal claims fail to invoke the Court's subject matter jurisdiction. His asserted claims do not meet the requirements of Article III standing. Moreover, many claims are either barred by an applicable immunity or are patently and utterly implausible. The complaint also fails to comply with the pleading requirements of Fed. R. Civ. P. 8(a)(2). And plaintiff's recently filed amended complaint (Doc. No. 32) was filed in violation of the time limits established in Fed. R. Civ. P. 15(a). It also does not cure the deficiencies of the original compliant, making it futile and making leave to amend improvident to grant.

The Court, therefore, **DISMISSES** the complaint against all defendants pursuant to Rule 12(b)(1). The state defendants' motion to dismiss under Rule 12(b)(6) is **DENIED** as moot. And the amended complaint is **STRICKEN** from the record.

## I.      FACTUAL BACKGROUND

Within a voluminous complaint spanning 100 pages and 12 exhibits—including a 531-page book titled "The Butcher of Pakistan" (Doc. No. 1-1)—plaintiff brings several causes of action against one federal judge, three present or former Ohio state court justices, and one Ohio-licensed attorney and former state legislator. (Doc. No. 1, at 2.) Plaintiff alleges a grand conspiracy among defendants to sabotage the efforts of plaintiff's former law firm to obtain successful

outcomes in a series of medical malpractice cases brought against Dr. Abubaker Atiq Durrani ("Dr. Durrani") approximately 13 years ago (collectively referred to as the "Durrani litigation"). (*Id.* at 3–6.)

The Durrani litigation consists of claims from former patients of Dr. Durrani, who is alleged to have performed unnecessary spine surgeries on some 580 victims. (*Id.* at 9.) Dr. Durrani's fraudulent actions in this regard led to a federal indictment in 2013, after which Dr. Durrani fled the United States and remains at large. (*See id.*) Plaintiff's role in the Durrani litigation is as "the man who finances the Duranni [sic] victims' battle for over thirteen years, speaks out publicly about their plight, has risked everything [he has] for the Durrani victims' cause twice and who is appreciated by the 580 Duranni [sic] victims[.]" (*Id.* at 5.) He makes the following statement regarding his stake in the lawsuit: "I file this pro se because I can. Unfortunately, I cannot file it on behalf of all the Duranni victims since I am a retired attorney,[3] but the results of the action will benefit all the Duranni victims and that is why I am filing it." (*Id.* at 3.)

---

[3] The Court observes that plaintiff has been suspended from the practice of law in Kentucky for disciplinary reasons. *See Deters v. Kentucky B. Ass'n.,* 627 S.W.3d 917, 928–929 (Ky. 2021) (denying reinstatement of license and noting that "Deters has NO appreciation of the wrongfulness of his prior misconduct, possesses NO contrition for that misconduct, and has NOT rehabilitated himself from past derelictions"). The Kentucky Supreme Court ordered that "Deters shall cease any and all activities relating to the practice of law, howsoever designated, including, but not limited to paralegal, consultant, or spokesperson for the Deters Law Firm or any other entity." *Id.* at 929. The Kentucky Bar Association's website currently lists Deters among the lawyers suspended for disciplinary reasons. (*See* Kentucky Bar Association > For Public > KBA Currently Suspended and Disbarred Lawyers, last visited 1/16/2026.) The Ohio Supreme Court has also permanently enjoined plaintiff "from engaging in acts constituting the unauthorized practice of law in Ohio." *Disciplinary Couns. v. Deters*, 180 N.E.3d 1086, 1093 (Ohio 2021). Plaintiff's disciplinary action came after he "permanently retired from the practice of law in Ohio on September 17, 2014, following the suspension of his Kentucky law license." *Id.* at 1088. The Ohio Supreme Court's website lists Deters' current status as "Not Required—Permanently Retired." (*See* Ohio Attorney Search, last visited 1/16/2026.) The Court takes judicial notice of these facts pursuant to its authority under Rule 201 of the Federal Rules of Evidence to "take judicial notice of proceedings in other courts of record and of judicial decisions." *Smith v. Warden, Se. Corr. Inst.,* No. 2:16-cv-533, 2017 WL 4349095, at *4–5 (S.D. Ohio Sept. 29, 2017) (internal quotations and citations omitted) (taking judicial notice of Ohio Court of Appeals cases concerning attorney disbarment), *aff'd sub nom. Smith v. Cook*, 956 F.3d 377 (6th Cir. 2020).

From plaintiff's astonishingly verbose complaint—replete with personal attacks on defendants and other public figures, commentary on politics and general societal failings, and literary and historical quotes and references—the Court was able to extract the following relevant facts. Plaintiff's allegations against Chief Justice Sharon Kennedy, former Chief Justice Maureen O'Connor, Justice Deters, and former Representative William Seitz arise out of plaintiff's dissatisfaction with a lack of substantive progress in the Durrani litigation. Plaintiff alleges that the Ohio Supreme Court, "led by the now retired Chief Justice Maureen O'Connor, followed by the current Chief Justice Sharon Kennedy," has refused to try his cases expeditiously. (*Id.* at 9–10.) In conclusory fashion, he avers that—among many acts of judicial misconduct—Chief Justice O'Connor refused to recuse herself and a trial court judge from the Durrani litigation, failed to follow the Ohio Supreme Court rules in requiring trials within three years, was "bought" by medical and health insurance companies,[4] and ordered "baseless investigations" of attorneys involved in the litigation. (*Id.* at 43–44.)

In like conclusory fashion, Chief Justice Kennedy is alleged to be "equally owned by the same group of hospitals, law firms, and insurance companies[,]" disagreed "in not reconsidering" a Durrani case, and "has millions in her campaign coffers from the same groups who gave it to [former Chief Justice O'Connor.]" (*Id.* at 44.) And former Ohio State Representative Seitz endorsed H.B. 179, a state bill which plaintiff believes will cause Ohio to "become a breeding ground for incompetent foreign doctors who commit malpractice." (*Id.* at 45–46.)

---

[4] Plaintiff offers only his suspicion as to possible bribery, neglecting to cite any factual support for this conclusory allegation.

4

Plaintiff's allegations against Judge Barrett concern actions taken by Judge Barrett in federal court proceedings over which he presided, including Dr. Durrani's criminal case and certain Durrani civil cases. While plaintiff maintains that Judge Barrett "has engaged in an extra judicial effort to destroy me and the Durrani [plaintiffs]" (*see id*.), the factual allegations of wrongdoing all involve judicial actions. Specifically, the complaint alleges that Judge Barrett "allowed Dr. Durrani out on his own recognizance on federal criminal charges," "sat on" a ruling concerning an expert witness testimony to pressure a settlement, forced a settlement with some Durrani plaintiffs, never ordered Medical Protective's CEO to court or mediation, ruled against the Durrani plaintiffs' expert witness testimony, forced some Durrani plaintiffs to dismiss a case against a lawyer for Dr. Durrani, refuses the Durrani plaintiffs a trial or a scheduling order and refuses to dismiss the plaintiffs' claims, has failed to rule on several motions, and has "ignored" the Durrani plaintiffs' discovery requests. (*Id.* at 13–21.) As further examples of Judge Barrett's alleged lack of judicial professionalism, the complaint reproduces the "exact language [plaintiff] gave to Judge Barrett and opposing counsel to assist Judge Barrett on ruling" on certain motions that Judge Barrett apparently failed to follow or utilize. (*Id.* at 21.) That "exact language" consists of copies of plaintiff's 6th, 7th, 8th, and 9th sets of discovery. (*See id.* at 21–25.) It also includes a copy of Judge Barrett's "decision overruling the Motion to Dismiss in *Adams*" (one of the cases in the Durrani litigation). (*Id.* 25–28.) Further exemplars related to Judge Barrett's judicial actions taken in the Durrani litigation followed. (*See id.* at 28–34.)

The complaint goes on to make allegations against Justice Deters dating back to before Justice Deters's 2023 appointment to the Ohio Supreme Court. (*See id.* at 34–43.) Plaintiff knew Justice Deters from when the justice was a prosecutor for Hamilton County. (*Id.* at 34.) At some

point during Justice Deters's tenure as a prosecutor, plaintiff alleges he went part-time so he could work at a law firm and "make more money[.]" (*Id.* at 36.) "Early on in the [Durrani] litigation," plaintiff "calculated [he] could use some Hamilton County 'firepower.'" (*Id.* at 34.) The complaint then provides a long narrative of the plaintiff's interactions with and factual assertions regarding Justice Deters. (*See, e.g.*, *id.* at 37 ("I began referring to Joe [Deters] as my Air Force."), 36 ("[Judge Sylvie Hendon] sought my help in keeping her daughter and Joe [Deters] together amongst their marriage problems."), 41 ("I decided to abandon Joe [Deters] and even support his political opponent[.]").) Plaintiff expressed how he hoped that Justice Deters could use his connections and influence to help with the Durrani litigation to his clients' benefit. (*See id.* at 39.)

The complaint assures that plaintiff "did not want anything illegal; [he and his clients] wanted political influences." (*Id.*) Justice Deters is alleged to have made some promise to plaintiff regarding the Durrani litigation. (*See id.* at 39, 41–42.) Despite pleas for assistance, plaintiff insists that Justice Deters "failed the Durrani victims." (*Id.* at 39.) As one example, plaintiff avers that Justice Deters predicted that a particular holding in one of the Durrani cases would be affirmed by an appeals court. (*Id.* at 42.) But that holding was reversed. (*Id.*) Plaintiff further avers:

> "Make no question about it. It's illegal for a public official to use his public influence for economic benefit. But that's the entire 'thing' Joe promised me. And I wanted it for these victims. The evil bastards I knew used all their 'sources.' These victims deserved someone. Joe just didn't care."

(*Id.* at 39.) In concluding Justice Deters failed the Durrani victims, plaintiff sardonically stated: "Thanks, Joe. Thanks, Air Force." (*Id.* at 42.)

Regarding the alleged conspiracy with co-defendants, plaintiff alleges that Justice Deters "encourag[ed] Judge Barrett and Justices O'Connor and Kennedy[] to harm our cause in retaliation against me for my Dad and me firing him[.]" (*Id.* at 43.) Plaintiff states that "Judge Barret credits

6

Justice Deters with his appointment." (*Id.* at 17.) Disillusioned with Justice Deters's failures, plaintiff states that "[t]he last communication [he] sent Joe [Deters] and [another friend] Willie was a text with a photo of a burning bridge." (*Id.* at 42.) Since then, Justice Deters "has done all he can to hurt our cause[.]" (*Id.* at 43.)

Toward the end of the complaint, plaintiff alleges that his "forced retirement [from practicing as a lawyer] cheated the victims out of [his] skills at trial." (*Id.* at 91.) Plaintiff blames his "forced retirement"[5] from representing clients on defendants who "interfere[ed] with [his] core contract rights[,]" "defamed [him] for the unauthorized practice of law[,]" and "violated [his] right to work in [his] chosen profession." (*Id.* at 92–93.)

Plaintiff cites 42 U.S.C. §§ 1983, 1985, and 1986 as the bases for the Court's jurisdiction and contends that he brings his claims against defendants under 18 U.S.C. § 241 (conspiracy against rights). (*Id.* at 92–98.) He alleges that defendants have engaged in defamation, bribery, extortion, honest services fraud, mail and wire fraud, and abuse of process. (*Id.* at 92.) He further alleges that defendants have violated his Fourteenth Amendment rights and the Durrani plaintiffs' Seventh Amendment rights. (*See id.*) He raises seven specific causes of action: civil rights violations under 42 U.S.C. § 1983 (First Cause), defamation (Second Cause), negligent infliction of emotional distress (Third Cause), intentional infliction of emotional distress (Fourth Cause), malicious abuse of process (Fifth Cause), civil conspiracy (Sixth Cause), and a claim under Ohio Rev. Code § 2307.60 (Seventh Cause). (*Id.* at 92–98.) Plaintiff seeks monetary relief, recovery of

---

[5] Again, the Court clarifies that Deters is suspended from the practice of law in Kentucky, permanently retired in Ohio, and permanently enjoined from the unauthorized practice of law in Ohio. *See Deters v. Kentucky B. Ass'n,* 627 S.W.3d 917, 929 (Ky. 2021); *Disciplinary Couns. v. Deters*, 180 N.E.3d 1086, 1093 (Ohio 2021).

costs incurred in the action, prejudgment interest, and such other relief as the court finds proper. (*Id.* at 98.)

## II.     STANDARD OF REVIEW

Federal courts "are under an independent obligation to examine their own jurisdiction" in cases before them. *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 359 (6th Cir. 2006) (citation omitted). A district court must ensure that litigants have standing under Article III before assessing their claims. *Steigerwald v. Comm'r of Soc. Sec.*, 48 F.4th 632, 636 (6th Cir. 2022) (quotation marks and citations omitted). Moreover, the Court is permitted to conduct a limited screening and dismiss, *sua sponte*, a fee-paid complaint under Federal Rule of Civil Procedure 12(b)(1) "for lack of subject matter jurisdiction" when its allegations are so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (per curiam) (citing *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S. Ct. 1372, 39 L. Ed. 2d 577 (1974) (citing numerous Supreme Court cases for the proposition that patently frivolous, attenuated, or unsubstantial claims divest the district court of jurisdiction)). The requirement "that a plaintiff be given the opportunity to amend does not apply to *sua sponte* dismissals for lack of jurisdiction pursuant to *Hagans*." *Id.* (citation omitted).

Federal Civil Procedure Rule 8(a)(2) requires that a plaintiff offer "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Although specific facts are not required, to meet the basic minimum notice pleading requirements of Rule 8, a plaintiff's complaint must give the defendants fair notice of what the plaintiff's legal claims are and the factual grounds upon which they rest. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d

426, 437 (6th Cir. 2008) (quotation marks and citation omitted). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 2197, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Typically, *pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Indeed, the court ordinarily holds a *pro se* complaint to a less stringent standard than one drafted by an attorney. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines*, 404 U.S. at 520). Plaintiff indicates, however, that he is a "retired lawyer and legal consultant." (*See* Doc. No. 1, at 2.) The Court, therefore, does not construe his pleadings under the *pro se* standard. *See Cody v. Slusher*, No. 17-3764, 2018 WL 3587003, at *1 (6th Cir. Mar. 8, 2018) (refusing to apply liberal standard to petitioner's filings where petitioner attended law school and practiced criminal law outside Ohio); *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 633 (6th Cir. 2008); *Zanke-Jodway v. Cap. Consul., Inc.*, No. 1:08-cv-930, 2010 WL 914339, at *1 (W.D. Mich. Mar. 3, 2010) (attorney proceeding *pro se* is presumed to be aware of the rules of federal procedure).

## III. DISCUSSION

### a. Article III Standing

The judicial power of the United States is limited to actual "cases" and "controversies[.]" *See* U.S. Const. art. III, § 2. A district court must ensure that litigants have standing under Article III before assessing their claims. *See Steigerwald*, 48 F.4th at 636. Standing is a threshold

jurisdictional issue that must be addressed before reaching the merits of a case. *Kitchen v. Whitmer*, 106 F.4th 525, 533 (6th Cir. 2024) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). A "party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 523 U.S. at 104. Although none of the parties address Article III standing, that issue so important that the Court will raise it *sua sponte*. *See Chapman v. Tristar Products, Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) ("we are required to determine—sua sponte if the parties do not raise the issue—whether we are authorized by Article III to adjudicate the dispute").

Standing under Article III "requires (1) an injury in fact that is (2) fairly traceable to the challenged conduct of the defendant and is (3) likely to be redressed by a favorable judicial decision." *Kitchen*, 106 F.4th at 534 (internal quotation marks and citation omitted). A party invoking the power of a federal court must have a "personal stake" in the case. *In re East Palestine Train Derailment*, No. 24-4086, 2025 WL 3280837, at *3 (6th Cir. Nov. 25, 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) (further citations omitted)).

### i. Injury-in-Fact

Injury is the "[f]irst and foremost" prong of standing. *Steel Co.*, 523 U.S. at 103. It must consist of an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quotation marks and citations omitted). This definition demands that an injury be real and affect the plaintiff in a "personal and individual way." *Id.* at 560 n.1. And an attorney "must show an injury that is personal to [them]—not third parties like [] clients." *In re East*

*Palestine Train Derailment*, 2025 WL 3280837, at *4 (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 n.5, 144 S. Ct. 1540, 219 L. Ed. 2d 121 (2024)). Indeed, parties lacking any injury cannot "shoehorn themselves into Article III standing simply by showing that [the third parties they represent] have suffered injuries or may suffer future injuries[.]" *FDA*, 602 U.S. at 394 n.5.

Plaintiff's complaint pleads injuries other than his own. A plaintiff is the "master of his complaint." *Smith v. Nationwide Prop. and Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007). And this plaintiff's complaint emphatically declares his stake in the case: "I cannot file [this complaint] on behalf of all the Duranni victims since I am a retired attorney, but the results of the action will benefit all the Duranni victims and that is why I am filing it." (Doc. No. 1, at 3.) In other words, plaintiff's prime motive for this suit is to seek redress for persons not named as plaintiffs. And plaintiff indicates that he occupies the role of a named party, rather than the role of an attorney representing the Durrani victims, because he no longer practices law. (*See id.* at 91.)  The principal injury plaintiff identifies is the fact that he could not procure justice in the Durrani litigation for his non-party former clients.

That pleaded injury—if it is even a cognizable injury at all—is one that plaintiff's *clients*, not plaintiff himself, are alleged to have suffered. The complaint's 100 pages and attached book narrate his former clients' tribulations in the legal system as they pursued their claims against Dr. Durrani. (*See generally* Doc. No. 1; Doc. No. 1-1.) But plaintiff cannot rely on his former clients' alleged injuries to establish his own standing. *Cf. In re East Palestine Train Derailment*, 2025 WL 3280837, at *3 (concluding that a law firm could not demonstrate its own standing by claiming as

11

injury a court's order that "jeopardize[d] their clients' ability to recover money" because that was not "an injury that is personal to" it).

The factual allegations against each defendant pertain to their handling of the Durrani litigation. For former Chief Justice O'Connor and Chief Justice Kennedy, the factual allegations relate to their adjudication of cases and judicial administration directly impacting plaintiff's former clients. (*See* Doc. No. 1, at 43–44.) The same is true for Judge Barrett, who is alleged to have mishandled the Durrani victims' cases, and Dr. Durrani's criminal case. (*See generally id.* at 13–34.) The allegations concerning these jurists do not at any point explain how plaintiff himself "is among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 735, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972).

Similarly, claims against Justice Deters are based on how his conduct impacted the Durrani victims. Plaintiff "wanted political influences" from Justice Deters. (Doc. No. 1, at 39.) He states that Justice Deters "overpromised and underdelivered" on some implied but unarticulated commitment to help the Durrani victims procure justice. (*See id.*) These allegations concern the Durrani victims. Plaintiff admits that he "wanted it for these victims" and that "these victims deserved someone." (*Id.*) But the allegations against Justice Deters do not concern any injury inflicted on plaintiff. And insofar as plaintiff hoped then-prosecutor Deters would bring criminal charges, that is not a cognizable injury that any individual can assert. *Diamond v. Charles*, 476 U.S. 54, 64, 106 S. Ct. 1697, 1704, 90 L. Ed. 2d 48 (1986) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." (citations omitted)).

Finally, the allegations against William Seitz are limited to his support for a bill which plaintiff believes will make Ohio "a breeding ground for incompetent foreign doctors who commit

malpractice." (Doc. No. 1, at 45.) This allegation not only implicates legislative immunity (as explained *infra*.), it also fails to establish a "concrete" and "actual or imminent" injury. *Steel Co.*, 523 U.S. at 103. As previously noted, the injury-in-fact element of Article III standing "requires more than an injury to a cognizable interest." *Sierra Club*, 405 U.S. at 734–35. It requires plaintiff to show that he "is among the injured." *Id.* at 735. It also requires that the claimed injury "be certainly impending[.]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 133 S. Ct. 1138, 1147, 185 L. Ed. 2d 264 (2013) (internal quotations omitted).

Plaintiff's complaint fails to explain how Seitz's support for H.B. 179 has injured him or will imminently injure him. Rather, plaintiff seems to believe the bill may facilitate future injuries to the general public like the ones the Durrani victims suffered at the hands of Dr. Durrani. Plaintiff may find Seitz's support for this law particularly reprehensible and misguided. But "[t]he presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Diamond*, 476 U.S. at 62. And the general threat that a future doctor may commit medical malpractice by reason of this bill is far too conjectural. Such a potential impact from H.B. 179 is the kind of hypothetical injury reliant on "a highly attenuated chain of possibilities" that is insufficient to establish standing. *Cf. Clapper*, 568 U.S. at 410 (finding that possible future surveillance of plaintiffs' communications pursuant to a federal statute was too attenuated and reliant on a chain of consistencies to constitute a real injury-in-fact to show standing to challenge the federal statute).

Plaintiff's prediction that H.B. 179 will result in serious future injuries to Ohio residents is insufficient to establish a cognizable injury. The pleadings in this regard are merely "allegations of *possible* future injury" which are "not sufficient." *Clapper*, 568 U.S. at 409 (citations omitted).

Moreover, plaintiff merely pleads a general risk of medical harm arising from doctors authorized to practice medicine because of H.B. 179. That is not a particularized injury. *See Lance v. Coffman*, 549 U.S. 437, 442, 127 S. Ct. 1194, 167 L. Ed. 2d 29 (2007) (per curiam) (holding that mere injury that state law was not followed was "undifferentiated, generalized grievance about conduct of government" that was not a sufficiently particularized injury-in-fact); *United States v. Richardson*, 418 U.S. 166, 176–177, 94 S. Ct. 2940, 41 L. Ed. 2d 678 (1974) (holding that claimed injury of government's failure to disclose expenditures of Central Intelligence Agency was not a particularized injury but rather a "generalized grievance" whose "impact on [plaintiff] is plainly undifferentiated and common to all members of the public" (internal quotations and citations omitted)); *see also Ex parte Levitt*, 302 U.S. 633, 634, 58 S. Ct. 1, 82 L. Ed. 493 (1937) (per curiam) ("[T]o entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public.").

Plaintiff also avers that defendants' actions "forced [his] retirement." (Doc. No. 1, at 91.) While he complains that defendants "violate[d his] right to work in [his] chosen profession" (*id.* at 93), the deprivation for which he seeks redress is the fact that his "forced retirement" has "cheated the victims out of [his] skills at trial." (*Id.*) This claim too relies on the injuries of plaintiff's clients, not plaintiff himself. Because plaintiff is the master of his complaint, the Court takes him at his word: plaintiff asserts as an injury his former clients' deprivation of his legal services. That injury is not plaintiff's own and cannot establish Article III standing.

14

### ii. Causation

Even if plaintiff had raised his own injury relating to the limitations placed on his ability to practice law, the complaint fails to trace that injury to any defendant's specific conduct. To establish the causation element of standing, a plaintiff must show "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co.*, 523 U.S. at 103 (citation omitted). The bar for establishing causation at the pleading stage is "relatively modest[.]" *Buchholz v. Meyer Njus Tanik, PA*, 946 F.3d 855, 866 (6th Cir. 2020) (internal quotation marks and citation omitted). Harms that flow "indirectly from the action in question can be said to be fairly traceable to that action for standing purposes." *Id.* (internal quotation marks and citation omitted).

Yet, plaintiff's complaint fails to meet that modest standard. He makes much ado about several non-parties: the Kentucky Supreme Court, the Kentucky Bar Association, and the Ohio Supreme Court. (*See, e.g.*, Doc. No. 1, at 91 ("The KBA tried to hold me in contempt for working in a law firm where I was suspended.").) He mentions several disciplinary actions against him by these non-parties. (*See id.* at 67 ("Ohio and Kentucky investigated me for lending and giving 200 victims various sums of money" and "[b]ased upon the disciplinary rules, I had to retire my Ohio license[.]").) Plaintiff makes allegations concerning post-retirement statements. (*See id.* at 89 ("I am constantly and falsely accused of the unauthorized practice of law including by Judge Barrett.").) He also offers vague assertions that there were "baseless investigations" of attorneys in the Durrani litigation. (*Id.* at 44.) Finally, plaintiff makes vague and conclusory assertions that defendants defamed him, caused tortious emotional distress, and violated his constitutional rights. (*Id.* at 92–98.) All these allegations lack any detail connecting the causal dots. They do not identify

15

any specific act by any specific named defendant and then trace it to plaintiff's "retirement" from the bar, or to any other personal injury for which plaintiff seeks redress.

Furthermore, any injuries that are "so completely due to the [plaintiff's] own fault as to break the causal chain" also fail to establish standing. *Buchholz*, 946 F.3d at 866 (citations omitted). Insofar as plaintiff's "forced retirement" came about in response to the suspension of his Kentucky license and enjoinment from the unauthorized practice of law in Ohio due to his own professional misconduct, he cannot thereafter claim that defendants caused his inability to serve as counsel for the Durrani victims for purposes of standing. *See In re East Palestine Train Derailment*, 2025 WL 3280837, at *4 ("Cementing our conclusion [that there is no standing] is the fact any harm the [law] firm suffered was a result of its own doing.")

### iii. Redressability

The third standing element—redressability—requires that there must be "a likelihood that the requested relief will redress the alleged injury." *Steel Co.*, 523 U.S. at 103 (citations omitted). Plaintiff seeks relief in the form of compensatory damages, punitive damages, costs, and prejudgment interest. (Doc. No. 1, at 98.) But he proffers no explanation for how the Court's award of payment to him personally would redress injuries caused to nonparty Durrani victims.

Nor can he claim as redress repayment of costs incurred as the "man who finances the Durrani victims' battle[.]" (*See id.* at 5.) This is because "a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the costs of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself." *Steel Co.*, 523 U.S. at 107; *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990) (An "interest in attorney's fees is . . . insufficient to

create an Article III case or controversy where none exists on the merits of the underlying claim[.]"); *In re East Palestine Train Derailment*, 2025 WL 3280837, at *4 (finding that court order "jeopardiz[ing] their clients' ability to recovery money" was not "an injury that is personal to" the law firm). Plaintiff fails to show how the relief he seeks redresses the injuries he pleads.

* * *

Plaintiff's complaint focuses on the injuries of nonparties. He does not trace any of defendants' actions to his own injury-in-fact. And he has not shown how a favorable court ruling will provide him redress. His stake in this case is that of a "concerned bystander[.]" *Diamond*, 476 U.S. at 62. Accordingly, he lacks Article III standing, and this Court lacks jurisdiction.

### b. Utter Implausibility of Legal Claims

The Court's entertainment of the complaint is further barred by the utter implausibility of the legal claims therein. "When a district court is faced with a complaint that appears to be frivolous or unsubstantial in nature, dismissal under rule 12(b)(1) (as opposed to Rule 12(b)(6)) is appropriate in only the rarest of circumstances where [] the complaint is deemed totally implausible." *Apple*, 183 F.3d at 480. Plaintiff's complaint presents that rare case of "utter implausibility[.]" *Id.*

### i. Federal Claims Under 18 U.S.C. § 241 and 42 U.S.C. §§ 1983, 1985, and 1986

Plaintiff filed a "complaint under 18 U.S.C. § 241 Conspiracy Against Rights Violation of Constitutional Rights and Judicial and Legislative Corruption." (Doc. No. 1, at 1.) Insofar as plaintiff alleges that defendants violated 18 U.S.C. § 241, his claim fails as a matter of law. Section 241 is a criminal statute and provides no private right of action to civil plaintiffs. *See Bey v. Ohio*, No. 1:11-cv-1306, 2011 WL 4944396, at *3 (N.D. Ohio Oct. 17, 2011) (citing *U.S. v. Oguaju*, 76

17

F. App'x 579, 581 (6th Cir. 2003)). And if plaintiff is attempting to bring criminal charges against the defendants, he lacks standing. *See Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004) (A private citizen "has no authority to initiate a federal criminal prosecution [against] defendants for their alleged unlawful acts." (citations omitted)). Any claim plaintiff seeks to bring under § 241 is thus "totally implausible" and "devoid of merit[.]" *Apple*, 183 F.3d at 479.

In plaintiff's first claim, filed under 42 U.S.C. § 1983, he asserts that he has a constitutional right to due process, equal protection, and "health, reputation, wages, and benefits," and he alleges that he was denied "those rights secured under the Fourth, Sixth, and Fourteenth Amendments by one or more foregoing Defendants acting under color of state law." (Doc. No. 1, at 94–95.)

To establish a violation under § 1983, a plaintiff must show that a person acting under color of state law deprived him or her of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). And civil rights claims "'must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Briscoe v. Jackson*, 285 F. App'x 205, 208 (6th Cir. 2008) (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (further citation omitted)).

Here, plaintiff's § 1983 claim does not provide any clear factual basis for his purported civil rights claims. Despite the lengthy pleadings, plaintiff fails to clearly articulate facts that would support a specific federal constitutional right of his own that was infringed. Nor does he establish a causal link between any constitutional infringement and a particular defendant's actions under color of state law. And the cause of action against Judge Barrett is plainly meritless because all factual allegations against him pertain to his actions as a federal judge. *See Conner v. Greef*, 99 F.

App'x 577, 580 (6th Cir. 2004) ("The federal government and its officials are not subject to suit under 42 U.S.C. § 1983." (citation omitted)).

Plaintiff asserts his vague and conclusory claims generically against "one or more foregoing Defendants acting under color of state law." But "[i]t is not the obligation of the Court to dissect Plaintiff's complaint to divine who Plaintiff believes committed certain actions." *Moore v. Michigan*, No. 1:07-cv-561, 2008 WL 724151, at *9 (W.D. Mich. Mar. 17, 2008) (citations omitted). The claims brought under § 1983 are thus "frivolous" and "devoid of merit[.]" *Apple*, 183 F.3d at 479. They must be dismissed.

Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 also lack merit. A claim under § 1985 requires plaintiff to: (1) allege that defendants conspired together for the purpose of depriving plaintiff of the equal protection of the laws, and (2) committed an act in furtherance of the conspiracy which was motivated by racial or other class-based discriminatory animosity. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) (citation omitted). Plaintiff's factual allegations in support of a conspiracy claim "must be pled with some degree of specificity" and cannot be vague or conclusory. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, plaintiff's complaint fails prong two. He makes no specific allegation of any racial or other class-based discriminatory animosity. His only two mentions of race or any racial discrimination are in two conclusory statements where plaintiff declares: "Plaintiff was subjected to a pattern of discrimination and misconduct based, in whole or in part, her [sic] race" and "Defendants' actions toward Plaintiff are evidence of a pattern of race discrimination[.]" (Doc. No 1, at 96–97.) These allegations are far too conclusory and vague to invoke the protections of § 1985.

Section 1986 imposes liability on anyone who has knowledge of a conspiracy under § 1985 and the power to prevent the commission of that conspiracy yet neglects or refuses to do so. *See, e.g., Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). Where a plaintiff has failed to state a claim under § 1985, "no cause of action exists under § 1986." *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990) (citations omitted). Here, plaintiff's § 1985 claim fails for lack of specificity. He cannot, therefore, predicate his § 1986 claim on his § 1985 claim.

### ii. Judicial Immunity

Plaintiff's claims against Chief Justice Kennedy, former Chief Justice O'Connor, and Judge Barrett pertain to each defendant's judicial oversight of cases that plaintiff litigated. Because the claims are predicated exclusively on judicial functions, these defendants have absolute immunity from suit. And to the extent that plaintiff's allegations against Justice Deters concern conduct that occurred after his appointment to the Ohio Supreme Court, Justice Deters is also immune.[6]

Judicial officers are generally entitled to absolute immunity from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) (collecting cases); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (collecting cases). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case

---

[6] Although unclear from the complaint, it appears that the majority of the purported allegations against Justice Deters concern the time period before his judicial tenure. But all remaining allegations related to pre-2023 conduct fail to demonstrate a cognizable injury. Indeed, allegations against Justice Deters pertain only to (1) his personal relationship with the plaintiff, (2) plaintiff's expectation that Justice Deters would help litigate the Durrani cases, or (3) Justice Deters' alleged conspiracy with the other defendants to harm the Durrani victims. (*See, e.g.*, Doc. No. 1, at 39 ("He overpromised and underdelivered" and "Joe failed the Durrani victims."), 41 ("[Deters] never responded or tried to resolve our relationship."), 43 ("Since my 'break up' with Joe Deters, he has done all he can to hurt our cause including encouraging Judge Barret and Justices O'Connor and Kennedy, to harm our cause[.]").) There is no constitutional violation where a private friendship ends, or where one fails to get a political or personal favor from an individual.

is not impaired by the exposure to damages by dissatisfied litigants. *Barnes*, 105 F.3d at 1115. This absolute immunity may be overcome only when (1) the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. *Mireles*, 502 U.S. at 11–12; *Barnes*, 105 F.3d at 1116.

A judge will not be deprived of immunity even if the action at issue was performed in error, done maliciously, or performed in excess of his or her authority. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984) (merely acting in excess of authority does not preclude immunity). And an allegation of conspiracy is insufficient to defeat judicial immunity. *See Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("[A]llegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest, or outright malevolence." (citation omitted)).

Here, there is no suggestion in the complaint that two of the state judges—Chief Justice Kennedy and former Chief Justice O'Connor—were acting in any capacity other than that of judicial officers. Nor is there any suggestion that the defendants' actions were taken in complete absence of all subject matter jurisdiction of the Ohio Supreme Court. Allegations regarding former Chief Justice O'Connor are targeted at her adjudications impacting the Durrani litigation. (*See* Doc. No. 1, at 43–44.)[7] The same holds true for the allegations against Chief Justice Kennedy. (*Id.*

---

[7] Again, these judicial actions included: refusing to recuse herself, not recusing another judge from the Duranni cases, assigning all of the Durrani litigation cases to the same judge, and not following Ohio Supreme Court rules requiring trials to be completed within 3 years. (*Id.*) Plaintiff also offers the allegation that she was "bought" by the healthcare industry and large defense firms that made contributions to her campaigns, but he offers no support, other than his own suspicion, to prop up this conclusory allegation. (*Id.* at 44.)

at 44.) And allegations that Justice Deters "encouraged" Judge Barrett, Chief Justice Kennedy, and former Chief Justice O'Connor "to harm [the] cause" of the Durrani litigation, to the extent any of this happened after his judicial appointment, relate to his purview over the Durrani litigation as a judge. (*See id.* at 43–45.) These actions, too, are covered by judicial immunity.

Federal judges retain absolute immunity from liability as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against them. *Mireles*, 502 U.S. at 11–12; *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001). Here, plaintiff alleges that Judge Barrett failed to timely rule on expert testimony, failed to rule on several motions, allowed Dr. Durrani to be released on his own recognizance, forced a settlement in the Durrani litigation, forced some plaintiffs to dismiss a case against an attorney for Dr. Durrani, ignored discovery requests, failed to order a party/witness to mediation, and refuses to schedule a trial. (*See* Doc. No. 1, at 13–34.) These allegations all describe judicial acts. And although plaintiff conclusively asserts that Judge Barrett "has engaged in an extra judicial effort to destroy me and the Durrani [plaintiffs]" and "has acted outside his judicial office to do so" (*id.* at 18), he follows these conclusory allegations with examples of actions that are entirely judicial in nature.[8]

The claims against former Chief Justice O'Connor, Chief Justice Kennedy, and Judge Barrett are entirely based on their judicial acts and are thus barred by absolute judicial immunity.

---

[8] For example, immediately after plaintiff alleges that Judge Barrett "engaged in extra judicial effort to destroy" him, plaintiff alleges that Judge Barrett limited the number of depositions in a case, and failed to schedule a trial or dismiss the claims in a case. (*Id.*) Of course, these are all judicial actions. The fact that plaintiff alleges that these judicial acts were done maliciously or with "cruel and malevolent" intent (*see id.*) does not serve to defeat the immunity these defendants enjoy. *See Huffer v. Bogen*, 503 F. App'x 455, 459 (6th Cir. 2012) (finding that "judicial immunity applies even to judicial acts performed maliciously, corruptly, in bad faith, or in error" (citing *Brookings v. Clunk*, 339 F.3d 614, 617 (6th Cir. 2004)).

Any claims related to Justice Deters's post-appointment conduct over the litigation are likewise barred by judicial immunity.

### iii.  Legislative Immunity

Former Representative Seitz enjoys absolute legislative immunity. Legislative officials are absolutely immune from civil rights claims arising out of their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998); *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000). Legislative immunity applies to "all actions taken in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54 (citation omitted). Whether an act falls within the sphere of legislative activity "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* Matters are within the sphere of legislative activity when they are an "integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625, 92 S. Ct. 2614, 33 L. Ed. 2d 583 (1972).

Here, plaintiff's sole allegation against former Representative Seitz is that he endorsed H.B. 179, which plaintiff believes will result in Ohio "becom[ing] a breeding ground for incompetent foreign doctors who commit malpractice." (*See* Doc. No. 1, at 45.) Endorsing particular legislation, however, is a legislative activity for which former Representative Seitz is entitled to legislative immunity.

### c. Rule 8 Pleading Standard

Although there is no jurisdiction to consider the merits of defendants' motion to dismiss, the Court finds it necessary to comment on the other utterly inappropriate pleading deficiencies in plaintiff's complaint. Plaintiff's failure to satisfy the Rule 8(a)(2) pleading standard has hampered review of his complaint, and would have provided an alternative basis for dismissing this action. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Fed. R. Civ. P. 8(a)(2)). The allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(d). Although specific facts are not required, to meet the basic minimum notice pleading requirements of Rule 8, a plaintiff's complaint must give the defendants fair notice of what the plaintiff's legal claims are and the factual grounds on which they rest. *See Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008). The complaint must contain either direct or inferential allegations respecting all material elements of some viable legal theory to satisfy federal notice pleading requirements, and unsupported assertions of legal conclusions are insufficient. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).

It is not the role of the Court to "search the record and construct arguments[;] [p]arties must do that for themselves." *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017). But this complaint's prolixity forces the Court to do just that. Indeed, it includes wholly irrelevant narratives about defendants and non-parties. (*See, e.g.*, Doc. No 1, at 38 ("Joe Deters told me inside stories, including most personal stories about [several judges] . . . I heard it all. All the dirty little secrets he knows, he told me."); 44 ("The Hamilton County Republican Party with the law firms

24

Dinsmore, Taft, Rendigs and Frost Brown Todd and others hosted an Annual Judicial Salute on May 1, 2025. I was banned from being there.").) Plaintiff also offers various unnecessary quotes from history and literature. (*See, e.g.*, *id.* at 7 ("Shakespeare wrote in Julius Caesar: 'A coward dies a thousand times before his death, but the valiant taste of death, but once.' The Defendants are walking zombies." And "Martin Luther King, Jr. warned 'Injustice anywhere is a threat to justice everywhere' Aye. It is.").) He informed the Court that he "sued Warren Buffet for defamation and tortious interference of a contract" (*id.* at 84), but did not explain how this is relevant to his suit against defendants. He even attached an exhibit of his book titled "The Butcher of Pakistan." (*See* Doc. No. 1-1.)

Beyond peppering the complaint with extraneous and irrelevant material, plaintiff has also improperly used his pleading to launch personal attacks on defendants and others. Throughout the complaint, plaintiff offers opinions of defendants and their associates untethered to the facts of the case and laced with abusive and charged language. For example, plaintiff alleges that "Defendants' treatment of the Durrani victims and [him]self is the evil and insidious performance of scoundrels." (Doc. No. 1, at 4.) He gratuitously adds that "based upon the Defendants' conduct, no more repugnant human beings have ever served on the judiciary and . . . the legislature." (*Id.* at 5.) Continuing this train of thought, plaintiff charges that "[t]he Defendants, like the Devil, rationalize all their sins. The Defendants have unquenchable thirst to fulfill their scheme with their very souls for sale." (*Id.*) He concludes by opining that "hell awaits the Defendants and their co-conspirators."[9] (*Id.* at 7.)

---

[9] With respect to one individual defendant, plaintiff adds "I hate her. I loathe her. And the world knows why." (*Id.* at 44.)

"Legal pleadings are no place for demeaning and derogatory comments, [and] personal insults[.] They bring public scorn on the legal profession and the judicial system." *Food Lion, LLC v. Dean Foods Co*., No. 2:07-cv-188, 2016 WL 806076, at *1 (E.D. Tenn. Jan. 11, 2016); *see Mills v. City of Barbourville*, 389 F.3d 568, 581 (6th Cir. 2004) ("Ad hominem attacks on parties have no place in a judicial proceeding.") No matter how strongly plaintiff believes that his former clients have been wronged, such abusive language has no place in any litigation. Plaintiff is hereby admonished for his unprofessional attacks upon defendants. Should he find himself in federal court in the future, plaintiff would be wise to confine his filings to proper allegations and arguments.

Ultimately, the Court finds that plaintiff's complaint is anything but a "short and plain statement" showing entitlement to relief. Fed R. Civ. P. 8(a)(2). To attempt to understand plaintiff's legal claims, the Court was required to parse through a convoluted litany of grievances, irrelevant information, personal attacks, and conclusory allegations against defendants. Such verbosity is unacceptable. *See, e.g.*, *Samaritan Ministries Int'l v. Kane*, 736 F. Supp. 3d 1063, 1066 (D.N.M. 2024) (striking a 366-page complaint that "include[ed] redundant and immaterial statements" which were "far more information than is necessary to comply with Rule 8"); *Cintron-Luna v. Roman-Bultron*, 668 F. Supp. 2d 315, 317 (D.P.R. 2009) (dismissing *pro se* plaintiff's 56-page amended complaint that made the "task of deciphering her plausible claims for relief needlessly difficult and time-consuming"). Plaintiff, as a former practicing attorney, should be aware of the rules of federal procedure and should draft pleadings that conform to these strictures. It is not the Court's obligation to unravel the allegations and construct claims against defendants on behalf of a plaintiff. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Plaintiff's complaint would warrant dismissal for failure to comply with Rule 8(a)(2). Although dismissal under this rule would ordinarily include an opportunity to amend, the Court's lack of subject matter jurisdiction renders amendment futile.

### d. Motion to Amend

Several weeks after the parties fully briefed state defendants' motion to dismiss, plaintiff filed an amended complaint. (*See* Doc. No. 32.) Fed. R. Civ. P. 15(a)(1) allows for amendment of a complaint as a matter of course no later than 21 days after serving it or 21 days after service of a motion under Rule 12(b). Outside of this, a party may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Plaintiff filed his amended complaint on December 12, 2025. That is well past 21 days after he filed his complaint on September 3, 2025, and the state defendants filed their motion to dismiss on October 14, 2025. Given the timing, the rules required plaintiff to either seek leave from the Court or get consent from the parties. Plaintiff has done neither. Therefore, his amended complaint was improperly filed.

It is plaintiff's position that the amended complaint "is filed as a matter of right under FRCP 15 since no responsive pleading by Judge Barret or the other Defendants was filed." (Doc. No. 32, at 1.) But plaintiff incorrectly construes the time limit set by Rule 15. "[A] plaintiff's 21-day clock to amend without leave of the court applies to the case as a whole, not to individual defendants, and it begins to run with the *first* responsive pleading or Rule 12 motion filed in the case." *See Doe v. Gupta*, No. 3:22-cv-1122, 2023 WL 6290625, at *2 (N.D. Ohio Sept. 27, 2023) (collecting cases) (emphasis in original). Judge Barrett's failure to respond does not reset the 21-day deadline. Plaintiff's amendment remains untimely. The Court will strike the amended

complaint for failure to comply with Rule 15. *See, e.g., Ellis v. McLane Foodservice*, No. 1:23-cv-1587, 2023 WL 11931064, at *1 (N.D. Ga. Aug. 3, 2023) (striking amended complaint *sua sponte* for failing to comply with Rule 15), *report and recommendation adopted*, No. 1:23-cv-1587, 2023 WL 11931060 (N.D. Ga. Aug. 25, 2023).[10]

Moreover, even if the Court generously construed the amended complaint as a motion for leave to amend, it would be denied as futile. Plaintiff's amended complaint suffers the same jurisdictional deficiencies as his original complaint. Plaintiff adds several allegations regarding Judge Barrett's involvement in several cases. (*See, e.g.,* Doc. No. 32, at 15 ("On May 30, 2025, I filed another judicial conduct complaint against Judge Barrett."), 15 ("On November 19, 2025, after years of delay, Judge Barrett Dismissed 1:20-cv-170, the fraud case against Medical Protective.").) These all either fail to show a cognizable injury inflicted on plaintiff himself or are barred by judicial immunity.

He added significant factual assertions against William Seitz. (*See id.* at 47–51.) These allegations all relate to Seitz's legislative activities and general grievances about the legality of H.B. 179. (*See, e.g., id.* at 47 ("Bill Seitz is the person behind [H.B. 179.]"), 48 ("Simply R.C. 2305.15 as amended cannot pass constitutional muster under Article II, Section 28 of the Ohio Constitution.").) These allegations also fail to show a cognizable injury-in-fact or fail under legislative immunity.

---

[10] *See also Taylor v. Focus Receivables Mgmt., LLC*, No. 1:09-CV-2600, 2010 WL 11647673, at *4 (N.D. Ga. June 16, 2010) (striking amended complaint *sua sponte* where the amendment "is improper, impermissible, and violative of the Federal Rules of Civil Procedure." (citation omitted)), *report and recommendation adopted*, 2010 WL 11647674 (N.D. Ga. Oct. 1, 2010); *Thayse v. Anderson*, No. 2:06-cv-38, 2006 WL 3313750, at *1 (M.D. Fla. Nov. 14, 2006) ("This unauthorized [t]hird [a]mended [c]omplaint will be stricken pursuant to Fed. R. Civ. P. 15(a)[.]"); *Viera v. Sheahan*, No. 6:17-cv-6844, 2020 WL 3473503, at *1 (W.D.N.Y. June 25, 2020) (striking *sua sponte* portions of amended complaint for which the court did not provide leave under Rule 15 to add).

Plaintiff further complains that he is being unfairly accused of the unauthorized practice of law. (*See id.* at 88–92.) His clients from Deters Law "signed a new contract with Drake II" and "Deters Law employees are now Drake II employees." (*Id.* at 88–89.) Plaintiff merely "decided to be a consultant and not an employee to Drake II in another effort to stop the harassment" (*id.* at 88), so he believes it is unfair for others to claim he is acting unlawfully. *But see Deters v. Kentucky B. Ass'n*, 627 S.W.3d 917, 928 (Ky. 2021) ("Deters shall cease any and all activities relating to the practice of law . . . not limited to paralegal, consultant or spokesperson for the Deters Law Firm or any other entity."); *Disciplinary Couns. v. Deters*, No. 2020-1497, 180 N.E.3d 1086, 1093 (Ohio 2021) ("[W]e permanently enjoin Eric C. Deters from engaging in acts constituting the unauthorized practice of law in Ohio."). As with the previously addressed allegations regarding plaintiff's "retirement" from the practice of law, these allegations fail to show a cognizable injury because the pleading alleges them in connection with plaintiff's inability to serve as counsel for the Durrani victims, which he believes deprived them of quality legal representation.

Finally, plaintiff added conclusory allegations not relevant to the complaint or to any cognizable injury. (*See, e.g., id.* at 44 ("Joe Deters has a history of theft and illegal conduct including stealing from the Hamilton County Property room when he was a prosecutor per Mike Allen.").) Plaintiff's new allegations all fail to cure the pleading insufficiencies. They do not establish Article III standing, nor do they overcome judicial or legislative immunity bars. And they certainly do not comply with Rule 8(a)(2). Thus, amendment would be futile, and the Court need not grant leave to amend. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005).

## IV.     CONCLUSION

The Court concludes that:

1. Plaintiff has failed to establish Article III standing;

2. All claims against former Justice Maureen O'Connor, Justice Sharon Kennedy, and Judge Michael Barret are barred by judicial immunity;

3. All claims against former Ohio State Representative William Seitz are barred by legislative immunity;

4. All claims against Justice Joseph Deters fail due to either lack of standing, judicial immunity, or utter implausibility;

5. Plaintiff's noncompliance with the Rule 8(a)(2) would have served as an alternative and independent warranty for dismissal;

6. Plaintiff's amended complaint failed to comply with Rule 15(a); and

7. Even if plaintiff had sought leave to amend, it would have been denied as futile.

This complaint is **DISMISSED** for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). State defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is **DENIED** as moot. Plaintiff's improperly filed amended complaint (Doc. No. 32) is **STRICKEN** from the record. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: January 16, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**